Frank BASISTA, Plaintiff,

v.

Walter WEIR, Chief of Police, City of Duquesne, Charles Scalese, Captain of Police, and Vernon Smith, Police Officer, all of the City of Duquesne, Allegheny County, Pennsylvania, Defendants.

Civ. A. No. 61–226.

United States District Court
W. D. Pennsylvania.

Jan. 10, 1964.

Harry Alan Sherman, Pittsburgh, Pa., for plaintiff.

John E. Evans, Jr., Pittsburgh, Pa., for defendants Walter Weir and Charles Scalese.

T. Robert Brennan, Pittsburgh, Pa., for defendant Vernon Smith.

ROSENBERG, District Judge.

A jury returned a verdict for $1500 in favor of the plaintiff Basista as punitive damages in a Civil Rights action against the defendant Scalese, an arresting officer in a former criminal prosecution in a State court. The defendant Scalese is here on motions for a new trial and for judgment in accordance with a previous motion for a directed verdict. The Western Pennsylvania Chiefs of Police Association, the County of Allegheny Lodge No. 91, Fraternal Order of Police, and the City of Duquesne have each filed petitions, amicus curiae, and seek a reversal of the jury's verdict.

This action was originally brought by the plaintiff Basista against Walter Weir, Chief of Police of the City of Duquesne, Charles Scalese, Captain of Police and Vernon Smith, a police officer, all of the City of Duquesne.

On July 17, 1959 at about 5:30 o'clock P.M., defendants Scalese and Smith visited the plaintiff at his residence in Duquesne to talk to him about a complaint to Scalese from his sister-in-law about the plaintiff. The plaintiff invited the two defendants into his home. A discussion ensued but eventually it became heated. The plaintiff offered two or more times to take Scalese out to the quarry for a fight. In any event fists started flying and the police officers placed the plaintiff under arrest. The plaintiff resisted arrest, but the officers succeeded in getting him to the police car and eventually to the police station where he was confined. On the next morning the plaintiff was given a hearing before a magistrate of the City of Duquesne and he was held for court on two charges: (1) resisting arrest and (2) assault and battery upon Scalese. The Quarter Sessions Court of Allegheny County, Pennsylvania, after a non-jury trial, dismissed the action of resisting arrest because of the failure of the police to have a warrant and found Basista guilty of assault and battery. He was placed on probation. Basista failed to take an appeal from the judgment of the Court of Quarter Sessions and that judgment became final.

This action in the United States Court for the Western District of Pennsylvania followed on April 14, 1961. It was based upon the deprivation of the plaintiff's constitutional and civil rights in contravention of the Civil Rights Act, 42 U.S. C.A. § 1983.[1]

At the trial of the case before the jury, after it appeared that no evidence was presented against the defendant Weir, the Chief of Police, a motion for directed verdict was granted, but the case against Smith and Scalese was sent to the jury. The jury found in favor of the defendant Smith, and against the defendant Scalese and in favor of the plaintiff in the sum of $1500 as punitive damages, but allowed nothing for compensatory damages.

We shall treat the amicus curiae petitions first. It is gratifying to know on behalf of the public that there is such a thing as the spirit of esprit de corps among the various police officers who now come to the aid of Scalese. Although, if there had been any reason to ascertain the truth or to procure evidence which would have evoked the truth in the case, it would have been much more preferable to have had all of these police officers come forward at that time in aid of their fellow police officer. We may well assume that these men, as police officers, would have been able to ferret out the true facts in the case so that they might have been properly brought before a court of law. However, they have come into the case only after the jury has presented its verdict and we may well assume that the amici are not knowledgeable with the

---

1. 42 U.S.C.A. "§ 1983. Civil action for deprivation of rights. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. R.S. § 1979."

facts or the evidence of the case and came in only because the jury verdict was adverse to one of their fellow officers.

For the most part they are concerned about the effect which the verdict, if allowed to stand, will have upon police officers and the public generally. A verdict under the circumstances of this case, if allowed to stand, they maintain, may subject police officers to personal civil liability for damages by persons so inclined without any basis or provocation. Under these circumstances then, police officers and other law enforcement officers must of necessity "be deterred in effective apprehension of criminals and other law violators, in the proper and effective administration of their duties to preserve public peace and order." *

Unfortunately, this point of view is only one-sided. There is another point of view with which they must be faced, and that is that a police officer, by virtue of his very essential power to enforce the law, may become one for the doing of wrong acts as well as good acts such as are expected of him. From the early days of our country, the need for constitutional protective devices against those, themselves, in charge of law enforcement remained impressively implanted in the minds of our early lawmakers, and we are still, today, constantly reminded that there are law enforcement officers who are unconcerned with the constitutional rights of the everyday individuals who make up our public, and at times the unconcern extends even to the point of brutality.

The Federal Courts particularly are being called upon constantly to undo the intentional or lackadaisical acts of law enforcement officers who have flaunted the Federal Constitution as well as state laws and constitutions. We hope that law enforcement officers will come more quickly and better to understand the meaning of constitutional law enforcement and exert greater justice than can be accomplished by high-handed methods of individual peace officers who interpret their own

powers narrowly and so, innocently or ignorantly, perpetrate injustice upon others. I do not say that the defendant Scalese in this case has done anything wrong or that he has taken advantage of the plaintiff. That was not my function as the trial judge. That was, however, the function of the jury, and the jury has answered the question and made a finding of fact that Scalese did deprive the plaintiff of his Federal Constitutional rights.

The members of the various police organizations are police officers in their respective communities and it is their duties and functions to preserve the peace and integrity of the men in their communities who perform police work. This they can do only in accord with the principles of law by which they must be guided.

It cannot be for them, any more than it can be for me, simply an inclination of the heart to exonerate a police officer. When he is a party in a court of law, he must stand on his own feet as equally as must every other individual of whatever calling or standing in the community. A jury of 12 men and women examined the evidence and found against Scalese.

With due consideration for the amici who, I am sure, have come forward here with the best intentions, I must, nevertheless, fairly and impartially examine all the evidence in the case in the light of the applicable law, and arrive at a just determination on the questions now before me.

The defendant bases his motion for a new trial and judgment on a number of grounds. It is only on a rare occasion when a trial court will disturb the findings of a jury, and something of importance must appear which would induce a trial court to reverse or set aside the jury's findings. Rice v. Union Pacific R. Co., 82 F.Supp. 1002, 1006 (D.C.Neb., 1949). Under the circumstances of this case then, what is there upon which the defendant may base any relief for setting

* Amicus Curiae Petition of the Western Pennsylvania Chiefs' of Police Association at Page 2.

aside the jury's verdict? The plaintiff has set forth in his pleadings and has attempted to show before the jury that violations of the following constitutional provisions have occurred:

(a) The Fourth Amendment guaranteeing against unlawful searches and seizures and against unreasonable arrests;

(b) The Eighth Amendment guaranteeing release upon bail and no subjection to cruel and unusual punishment;

(c) The Fourteenth Amendment guaranteeing due process of law; and

(d) The Sixth Amendment guaranteeing the right to assistance by counsel.

██ First of all, let us consider the complaint that the plaintiff was allowed neither a doctor nor a lawyer when he had called for them after incarceration. Neither of these charges is proven out by the evidence. A call was put in immediately for a lawyer who said that he would be present on the following morning at the hearing. The lawyer was present. As for a doctor, nothing appears in the evidence to show that the plaintiff needed a doctor. True he was in a skirmish but no evidence was shown at any time that he had received treatable injuries. So, if there was any need for a doctor, none was shown to the jury. The plaintiff charges, too, that he was not allowed bail, but there was no showing that his lawyer or anyone else in his behalf came forward and tendered bail and that it was refused by the defendant, or that the defendant Scalese had any authority to accept bail. In any event it was also shown that the defendant Scalese had no responsibility in connection with the plaintiff after he brought him to the police station. Thereafter, it was the sergeant and his superiors who were in control of Basista's custody. The jury could not have found under these circumstances for the plaintiff.

██ The plaintiff says that there was no warrant used in bringing him into the police station, and that this amounted to a constitutional violation of due process.

We recall the testimony that when the police officers came to the plaintiff's home, Basista invited them in. Under these circumstances, Scalese would not have needed a warrant since the invitation to come into the home given by the citizen to the police officers would have excused the need for a warrant for an entry if Scalese had come on any police business. Giacolone v. United States, 13 F.2d 110 (Cir. 9, 1926).

During the time when the discussion became heated, we recall on at least two occasions the plaintiff had invited Scalese out to the stone quarry for fist fighting. Here, in effect, also was an invitation, but this was a *personal* invitation between the plaintiff and Scalese, not between the plaintiff and the police officer Scalese. When blows were struck, it must have followed that this was now, not action or conduct between a civilian and a police officer, but rather between two persons as individuals. So far then, we have no violation of any constitutional provisions. But blows were struck and this obviously was the cause for the whole affair. The question which went to the jury was, in effect, who struck the first blow? The plaintiff said that the defendant struck him. The defendant said that the plaintiff either struck him or had made an assault upon him, and there was nothing else he could do except to defend himself and arrest Basista for assault and battery and disturbing the public peace. The jury evidently determined from the evidence that the defendant was the aggressor and found against him. There is a question then in this connection. Did the jury assume that it could so find irrespective of whether or not it inquired into the composition of the aggression? I am of the opinion that the jury did not so find, because I failed to give them instructions on this very important question of fact and law.

We go a little further. If the defendant was the aggressor, was he so under color of state law as a police officer of the City of Duquesne? Or was he the aggressor because of any personal animus aside from his position? Or because of

an aggravation of temper between the two? The circumstances of this case call for a determination which we must make between color of police power and personal animus.

Basista was held by the magistrate the next morning on charges of resisting arrest and assault and battery. The Quarter Sessions Court of Allegheny County dismissed the charge of resisting arrest on the theory that there should have been a warrant for this arrest. Whether the Court was right or wrong, is also now before me, and I shall treat this question here as it may or may not be violative of our Constitution.

■ I instructed the jury (Tr. 453–54):

"Under the April 13, 1954 ordinance of the City of Duquesne, the Duquesne police not only have a right to arrest anyone within the provision of Section 1 of that ordinance, who violated its terms, but under Section 2 of the same ordinance, they are duty bound, upon view, if there was no time for making an information and obtaining a warrant, to arrest and bring to the city jail any person whom such police viewed or saw violating the provisions of Section 1–A of the ordinance * * *

"On view of any violations of the provisions of the ordinance, no warrant is required by a police officer to make an arrest of the offender. In other words, if you find that the plaintiff did in fact commit such acts as to violate the provisions of Section 1–A of the City of Duquesne ordinance, then you must find that the defendants, as police officers, not only had the right but were in duty bound to arrest the plaintiff. This would be in accordance with that city ordinance, which is a valid law."

This is the law. No warrant for arrest is needed where it is made upon view of the criminal act. Commonwealth v. Johnson, 198 Pa.Super. 51, 182 A.2d 541 (1962); United States v. Murphy (C.A. 3, 1961), 290 F.2d 573, 575.

■ Scalese was present at the happening. If Basista had in fact committed it, no warrant was necessary. But again there are two questions here: Did Basista commit the Act? and Does the answer to this first question conflict with the judgment of the Allegheny County Court of Quarter Sessions? If Basista had in fact not committed the act, that Court is in error, and we are now being called upon to correct it, at least, partially. We would then be acting as a court of appeals. This we cannot do as a matter of law. Neither can this be done here as a matter of fact, for we can neither rescind the probation sentence and refund the costs, nor set aside that Court's guilty judgment. If Basista did commit the act, the federal jury in this case was in error. In any event the decision of this jury is in conflict with the Quarter Sessions' Court judgment, for the Quarter Sessions Court decided that Basista had in fact committed the assault and battery.[2]

■ While an action under the Civil Rights Act exists independently of any collateral state action, it is not a proper action if it does not show a denial of federally protected rights. Screws v. U. S., 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). What federally protected rights were denied Basista? Not a denial of a doctor. Not a denial of a lawyer. Not a denial of bail. Not

2. The Quarter Sessions Court, perhaps erroneously, decided that the charge of resisting arrest could not be sustained for lack of a warrant. It would be far-fetched to expect a police officer whose arrest was being resisted to run to a magistrate and swear out an information (since no warrant could issue without an information) and return with the warrant to make the arrest. Furthermore, the Pennsylvania Statute, 1939, June 24, P.L. 872, § 314, as amended, (18 P.S. § 4314) provides, in part, for resisting arrest in these words: "Whoever knowingly, wilfully and forcibly obstructs, resists or opposes any officer or other person duly authorized * * * in making an arrest without warrant * * * is guilty of a misdemeanor * * *".

The Court held the arrest for the assault and battery as valid.

a denial of illegal entry, since the invitation cured that. Not a denial of an arrest warrant. Suits in federal courts under this section for the redress against deprivation of constitutional rights can only be maintained if the deprivation is the result of any state action. Anderson v. Moses (S.D.N.Y., 1960), 185 F.Supp. 727. When a public official performs within the scope of his authority, regardless of motives with which he performs his duties, he is immune from civil suit based on such acts. But where his act is outside the scope of his powers and beyond his authority, he is liable for the consequences of his action. Selico v. Jackson (S.D.Cal., 1962), 201 F.Supp. 475. While, however, this chapter of the Act was enacted to protect the civil rights of individuals, it was not enacted to discipline local law enforcement officers. Jennings v. Nester (C.A.7, 1955), 217 F.2d 153, cert. denied 349 U.S. 958, 75 S.Ct. 888, 99 L.Ed. 1281; Egan v. City of Aurora (C.A.7, 1960), 275 F.2d 377, affirmed in part, vacated in part on other grounds, 365 U.S. 514, 81 S.Ct. 684, 5 L.Ed.2d 741. In any event, this chapter should be so construed as to respect the proper balance between the states and the federal government in law enforcement. Stefanelli v. Minard (1951) 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138; Pugach v. Dollinger (D.C.N.Y., 1960), 180 F.Supp. 66; affirmed 277 F.2d 739 (C.A.2, 1960); affirmed 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678 (1961).

The Civil Rights Act was never intended to displace state remedies. It was created as a guarantee that a remedy would be provided where the State for ulterior or no reasons would not or could not provide one. Basista had been provided with state remedies but he chose not to avail them. He showed no reasons for refusing them. While it is true that a party is not required to exhaust his state remedies before resorting to federal rights action or even using them concurrently (Screws v. U. S., su-

pra); Monroe v. Pape (1961), 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492, the reason for failing to take advantage of state remedies may as here provide the shading or coloration required to distinguish in the remedy pursued between redress of a violation of civil rights and retaliation for an affront to personal pride.

I am here concerned with both the findings of the State Court in this connection and the reasons why the plaintiff did not take an appeal from the Court's findings if he thought it was erroneous. (Or did he think it was erroneous?) The plaintiff's lawyer argues that the cost of an appeal was prohibitive. That may be, but the failure to appeal may also be evidence of the attitude of a defendant in a criminal case.

The question comes also that, if it was the policeman who struck the first blow, why did not the present plaintiff bring before any one of the almost 300 aldermen and justices of the peace, committing magistrates in Allegheny County, cross-actions of assault and battery against Scalese.[3] This is commonly and regularly done. It was not done in this case. Was it because at the time, when all of this was fresh, that the plaintiff Basista did not believe that he was the assaulted party, and rather that he was the one who had made the assault? Basista had his legal and reasonable rights. If he had resorted to his state remedies at the time, the disputes would have been aired by judicious courts and there would have been an end to the litigation (if not to the personal animosities). The plaintiff did not avail himself of his state remedies, either at that or at any other time. Now he comes into a United States court with this action. Is this in lieu of the actions which he could and perhaps should have brought in the state courts? Is this such an action which a federal court ought to take cognizance of because of a civil rights violation? Or is it an action that has accrued because of the disagree-

---

**3.** The Court takes judicial notice of the fact that there are assigned 49 aldermen in the four cities of Allegheny County, and approximately 250 assigned justices of the peace in the boroughs and townships of Allegheny County.

ment of two people, one of whom happens to be a police officer?

We must deal very carefully with this question for here we have a possible conflict between the sovereign state power and the overriding of that power and so tend to upset the federal system. Pugach v. Dollinger, supra. Was the Act under which this action was brought intended to override all state power in this connection? We know that the judgment of conviction stands in the state court. We know that the plaintiff had failed to use certain state remedies which he could have done. How shall we weigh these?

Fundamentally they weigh in favor of the state court. No criticism or attack has been made against it—except by this action. And so the plaintiff virtually comes into this court and agrees to the validity of the state judgment and asks for another one here, diametrically opposed to the first one. By the grant of a verdict here, a doubt is logically levelled against the full faith and credit which all must impose in the state court. In a sense the State is a party to this action, though absent and perhaps non-contending. It is, nevertheless, an action where its rights must be recognized and respected.

Our questions here are (1) Where parties are involved in litigation and rest upon an intermediate judgment without availing themselves of an appeal as provided by state law, is such a judgment binding upon a federal court? (2) Where a state tribunal has provided a full, adequate and fair hearing to the parties as to the presentation of the facts, may a federal court provide another vehicle for the presentation of a variation of those facts and so either impeach or discredit the findings of the state tribunal?

In U. S. v. Silliman, (C.A.3, 1948), 167 F.2d 607, certain legal questions were raised which discuss much of our problem. Judge Goodrich at page 616 of 167 F.2d set forth two questions which required answering in order to apply the law to the facts of that case: (1) Did the New York State Court adjudicate the issue raised by the Government as it related to fraud? and (2) If it did, did the adjudication work a collateral estoppel against the Government in the subsequent federal court action?

In our case two similar factual questions may well be asked in order to apply the law to our facts. Did the Allegheny County Quarter Sessions Court adjudicate the question of which of the two, Basista or Scalese, was guilty of assault and battery upon the other? If it did, does that adjudication in the Quarter Sessions Court work a collateral estoppel against the plaintiff in this litigation?

The answer to the first question lies in the fact that the Quarter Sessions Court did find Basista guilty of assault and battery against Scalese. The answer to the second question is not so obvious. If this answer were to be made in a subsequent state court action for damages because of the assault and battery, the finding of the Quarter Sessions Court would control and the state court in any action for damages would be foreclosed by the judgment of the Quarter Sessions Court.

I cannot here make an out-and-out finding that this Court in this collateral action for the recovery of damages should not be similarly guided. Neither can I conclude that a federal court so situated is not bound to recognize that state judgment or that it may bypass it, unless there is good reason for so doing.

Judge Goodrich said at page 614 of 167 F.2d:

"The proposition is embodied in the statement of a general rule found in the Restatement of Judgments, § 68 (1): 'Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action * * *.' This rule is a rule of policy. Courts have concluded that it is more desirable to bring litigation to an end, once a party has had his day in court, than it is to allow parties to con-

tinue to contest further issues which have been heard and decided with the thought that a previous conclusion can be shown to be untrue and a later one true to the facts."

And again at page 617 of 167 F.2d:

"If an issue is raised and the party who has the burden fails in his proof and the issue is decided against him, he is just as much bound by collateral estoppel as though he had presented a barrel of testimony. A man cannot offer his cake and expect to keep it in litigation any more than anywhere else."

Since no appeal was taken by Basista from the judgment against him in the Quarter Sessions Court, it is interesting to note how the Court of Appeals considered this similar situation in the Silliman case. At page 618 of 167 F.2d:

"The Government took no appeal. Therefore, whether the conclusion of the learned Surrogate was right or wrong is not now a question which is open to litigation."

It would seem that perhaps this discussion would relate only to civil actions since it is a general rule of evidence that records in criminal cases are not admissible in evidence in civil cases although both grow out of the same facts. Chantango v. Abaroa, 218 U.S. 476, 481, 31 S.Ct. 34, 54 L.Ed. 1116 (1910). However, evidence as to a prior criminal conviction may be admissible in certain situations where the same factual issues are involved. Austin v. United States, 125 F.2d 816, 818, 819 (C.A.7, 1942); Burt v. Union Central Life Insurance Co., 187 U.S. 362, 23 S.Ct. 139, 47 L.Ed. 216 (1902). In any event, the general rule is not applicable in this case because the parties themselves have mutually stood upon the former criminal proceedings, in whole or in part, as suited their respective purposes. Accordingly, the parties themselves have made the determination of the assault and battery in the Quarter Sessions Court relevant in this present action.

As I have already indicated, in order for the plaintiff to succeed in a claim for damages in a state court, Basista would first have to establish some vindication as to the prior criminal proceedings either by the failure of the police to fully prosecute against him or by a judgment of the court of not guilty. Since there was a judgment of guilty charged to Basista, there would have been no recovery in a state court. Now the question lies under all these circumstances can there be a recovery in a federal court based upon the same factual issues already resolved to judgment in the state court?

I am mindful of the concluding words of Judge Goodrich in the Silliman case, supra, at pages 620 and 621 of 167 F.2d:

"The full faith and credit clause 'compels that controversies be settled so that where a state court has jurisdiction of the parties and subject matter the judgment controls in other states to the same extent as it does in the state where rendered.' * * * And, although judicial proceedings in the Federal Courts were not explicitly included within the language of the Constitution, it has been held by the Supreme Court that full faith and credit must be afforded to a state court's judgment when brought into relevancy in a Federal tribunal."

The exercise of federal jurisdiction to interfere with proceedings of the state government charged with prosecution and punishment of offenders is to be exercised with the greatest of care and is to be exerted only in exceptional cases involving such an emergency or urgency as necessitates action to prevent irreparable injury. Egan v. City of Aurora, supra.

The burden of this plaintiff in this court under these circumstances, and for the purpose of maintaining a proper balance between the state and federal governments, was to first show a deficiency or a disadvantage withheld by

which he was handicapped, obstructed or judicially prejudiced in the state court. None of these appear here and this federal court ought not to be used as a vehicle without good cause first being shown that it was a necessary vehicle to the complainants not used for ulterior purposes or in conflict with the principles upon which good government must rest. It was not proven in the evidence of this case that the state court failed to properly adjudicate the facts.

■ While it is conceivable that the state judicial processes deprived the plaintiff of his federally protected rights, yet to sustain an action under the Civil Rights Act, the state court proceedings must have been a nullity, or with a purpose of depriving a person of his rights. To hold otherwise, would open the door to aggrieved state litigants and set up the federal courts as the arbiter of the correctness of every state decision. Bottone v. Lindsley (C.A.10, 1948), 170 F. 2d 705; Johnson v. Stone, (C.A.Ill., 1959), 268 F.2d 803.

■ Just as we have the right to expect lawful performance from our peace officers, so too, courts of competent jurisdiction have the right to have their lawful judgments respected.

■ From all of the evidence presented in this case, I am not convinced that the plaintiff proved anything more than an action based on personal animosity, and not on any violation of federally protected rights. I am of the opinion that the jury was not adequately instructed and this was error on my part, for which reason, in any event, a new trial should be allowed. I am of the opinion that the plaintiff's remedy for any action he may have, or have had, is or was in the state courts.

The motion of the defendant for a directed verdict will be granted, without prejudice, or, in the alternative, a new trial.