**Phillip E. PLAMPIN, Plaintiff,**

v.

**UNITED STATES FIDELITY AND GUARANTY CO., et al., Defendants.**

**Civ. A. No. 77–20.**

United States District Court, D. South Carolina, Greenwood Division.

Dec. 27, 1978.

Daniel A. Speights, Hampton, S. C., for plaintiff.

Eugene C. Griffith, Blease, Griffith & Stone, Newberry, S. C., for R. W. Duvall.

J. E. McDonald, Burns, McDonald, Bradford, Erwin & Patrick, Greenwood, S. C., for Hartford Accident & Indemnity Co.

Joseph C. Coleman, Wade S. Kolb, Jr., Asst. Attys. Gen., Columbia, S. C., for all other defendants except Hartford Accident & Indem. Co.

Samuel F. Painter, Wilburn Brewer, Jr., Columbia, S. C., for L. L. Henderson, Huey L. Cockrell, Robert Guy Counts, Jerry Wayne Strickland, Yancy L. Puckett.

Edwin E. Evans, Asst. Atty. Gen., Robert D. Cook, Staff Atty., Columbia, S. C., for defendants Highway Patrolmen.

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

HEMPHILL, District Judge.

This matter is before the court on defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

In arriving at its decision the court has reviewed all pleadings, depositions to date, answers to interrogatories, and affidavits.

Plaintiff charges defendants, all of whom are either members of the Sheriff's Department of Newberry County or of the South Carolina Highway Patrol, with a series of personal harassments and in addition, harassment of his business, promulgated under color of their authority as state officers. He claims a right of action under 42 U.S.C. § 1983.[1] In developing his cause of action, he alleges that this harassment arose out of a fight on June 14, 1974, outside his beer tavern, located on the perimeter of the City of Newberry, in which the son of one of defendants, Deputy Sheriff Chrisley, was involved. Allegedly as a result of the fight, defendant Chrisley came to plaintiff's place of business and threatened plaintiff with his intention to close up the business. There are several acts of harassment on which plaintiff bases his action. Because they are numerous, it seems appropriate to list them before entering a discussion of the matter:

(1) The actions of defendant officers in conducting a license check near plaintiff's tavern on June 16, 1974, when some eighty (80) cars were stopped.

(2) The refusal of the Newberry County Sheriff's Department to provide plaintiff with normal law enforcement protection after a demand was made for such on March 14, 1975.

(3) The issuance to plaintiff of a parking ticket by defendant Duvall in May, 1975.

(4) The fact that in the summer of 1974, defendants circulated through plaintiff's place of business.

(5) One of defendants began the circulation of a petition among the local churches, which was against plaintiff's tavern operations.

(6) Defendant Henderson's instigation of public nuisance proceedings to close plaintiff's place of business.

(7) Defendant Henderson appearing in a proceeding before the A.B.C. Commission seeking the revocation of plaintiff's beer and wine license;[2] and

---

1. Plaintiff originally alleged conspiracy, however he has since withdrawn his claim for relief under 42 U.S.C. § 1985. (See *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) requiring some racial or perhaps otherwise class based, invidious discrimination to support a conspiracy claim.)

2. See *Gajon Bar and Grill, Inc. v. Kelly*, 508 F.2d 1317 (2d Cir. 1974) where "demogogic

statements" of a Town Supervisor's intent to eliminate topless dancing in a locality were not deemed sufficient evidence of a bad faith prosecution or harassment to enjoin a pending prosecution.

Mere threats of legal action standing alone cannot constitute a § 1983 violation. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Ashenhurst v. Carey*, 355 F.Supp. 1101 (D.C.Ill.1973).

(8) The arrest of plaintiff under a warranty, duly executed, charging plaintiff with pointing and firing a firearm and, after his arrest, refusing to accept a cash bond.

Plaintiff alleges all of these actions originated from the fight in which Chrisley's son was involved. There is no suggestion in the affidavits or depositions to indicate that any of the other defendants either knew of the fight or took offense at plaintiff on account of it. On the other hand, the record is replete with undisputed evidence of the many complaints received by the Sheriff's Department about the operations of plaintiff's tavern.[3] There was according to plaintiff's own statements an excessive amount of disorder at plaintiff's establishment.[4] The very incident which led to plaintiff's arrest for the use of a firearm indicates the atmosphere around plaintiff's place of business. It is against this background that the several incidents on which plaintiff bases his constitutional claims must be judged. So viewed, these incidents whether considered individually or in concert, are insufficient to make out a constitutional claim.

Plaintiff's complaint of a license check does not show any violation of plaintiff's right to liberty. He was not stopped, and no one was prevented from entering his tavern. His only objection to the check was that it inconvenienced people, some of whom may have been intending to patronize his tavern. This however is a natural and necessary incident of a license check when conducted near any business. These checks are a normal operation.[5] The fact that plaintiff's tavern is at a location where there is considerable traffic would make it a logical place to conduct a license check. It is significant, too, that a license check at that point was not renewed on a regular basis. Plaintiff did not allege that this check was set up more than a single time over the two year period, which suggests that the check was purely routine. Unless tied to other activities, which definitely indicated a malicious purpose of injuring plaintiff's business, it is hard to predicate a constitutional violation on this single incident.[6]

The traffic arrest of plaintiff almost a year after the fight seems too remote to fit into plaintiff's theory that all the incidents were part of a conspiracy instigated by defendant Chrisley and participated in by all the other officers. Plaintiff would give color to this arrest by alleging that this was the only traffic ticket issued by defendant Duvall, even though there were others who were ticketed for illegal parking also. Apparently plaintiff seeks to give this incident the appearance of selective law enforcement. However, the record shows conclusively that other officers issued traffic summons to others for the same offense at the same time.[7] This completely negates any claim of selective enforcement.[8] When plaintiff receives a traffic ticket for a conceded traffic violation at the same time

---

3. See the various offense reports submitted with defendant's memorandum.

4. See the sworn statements of plaintiff contained in his deposition taken prior to the nuisance hearing. He admitted there were underage people in his establishment "every day". Dep. p. 14. He admitted to exchanges of money "on the pool tables" p. 16, and to operating his business as late as 6 A.M. (p. 27). He was unable to deny that "on numerous occasions" crowds congregated outside his door with beer cans.

5. Courts have consistently upheld the right of law enforcement officers to make routine license checks conducted in good faith for purposes of traffic safety. Myricks v. United States, 370 F.2d 901 (5th Cir. 1967). See also: U. S. v. Lebinski, 460 F.2d 234 (10th Cir. 1972); South Dakota v. Opperman, 428 U.S. 364, 367 n. 5, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); Cady v. Dombrowski, 413 U.S. 433, 442, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

6. Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); Snowden v. Hughes, 321 U.S. 1 (1943).

7. See Bailey affidavit and Inman affidavit.

8. Oyler v. Boles, supra.

others are given similar summons, then it would be very hard, almost impossible, to say there was any basis for a constitutional violation claim.

A single failure of defendant to respond promptly to a call hardly demonstrates that defendants were consciously seeking to deny protection to plaintiff's property.[9] The record shows that plaintiff was a steady customer for police protection. He had received it on many occasions in the very period he claims there was a conspiracy to deny him protection.[10] A mere failure to respond immediately to a chronic complainant will not support a constitutional claim against a police officer.

So far as the fact that defendant officers from time to time visited plaintiff's tavern, should have been a cause for gratitude rather than one of complaint, since plaintiff was so often complaining of the difficulties he had at his tavern.[11] Further, the presence of the officers could not have interfered with plaintiff's business; rather it would have given a feeling of safety to the patrons and assured them against any harm.

It is difficult to find state action in the circulation by one of defendants of a petition against plaintiff's business in the local churches. Plaintiff's business was a source of considerable notoriety in the community. In appealing to the church people, defend-

ant in question was acting in a personal, not an official capacity.

There seems no dispute that plaintiff had a firearm at his tavern and fired it. A person not identified with defendants signed an affidavit for a warrant on account of just such an incident.[12] The Magistrate duly issued a legal warrant, and it was delivered to one of defendants for service. The fact that the officer then served the warrant does not create a constitutional tort.[13] It was the officer's duty to serve the warrant. However it was not the officer's duty to fix or to accept bond from plaintiff after his arrest; that was the prerogative of the Magistrate.[14] The later dismissal of the prosecution can not render the action of defendant invalid. If it did, every time a defendant was acquitted the officer who arrested him under a valid warrant could be sued under 42 U.S.C. § 1983.

The final claims of plaintiff center on the action of defendant Henderson in attempting to close plaintiff's tavern as a public nuisance. There is not the slightest dispute that the Sheriff received many complaints involving the operation of plaintiff's tavern and that he had been called to the tavern often because of disturbances there.[15] He was being subjected to a great deal of public pressure to do something about the disturbances at plaintiff's tavern. There is no evidence that the Sheriff was not acting in good faith and with probable cause in seeking either to close plaintiff's tavern or to

9. Mere refusal to investigate a particular offense cannot constitute a § 1983 violation. *Modla v. Chrysler Corp.*, 448 F.2d 769 (6th Cir. 1971), *cert. den.* 403 U.S. 909, 91 S.Ct. 2206, 29 L.Ed.2d 687 (1971).

10. See Offense Reports.

11. *Taylor v. Nichols*, 409 F.Supp. 927 (D.Kan. 1976), *aff'd.* 558 F.2d 561 (10th Cir. 1977).

12. See Thomas A. Juy's affidavit given before Magistrate Zobel.

13. A law enforcement officer, such as Sheriff's deputy, possesses a duty to serve a warrant valid on its face, regardless of validity. *Agnew v. City of Compton*, 239 F.2d 222, 231 (9th Cir. 1956); *Bur v. Gilbert*, 415 F.Supp. 335 (E.D. Wis.1976); *Bowens v. Knazze*, 237 F.Supp. 826, 829 (N.D.Ill.1965).

14. Plaintiff contended that the fact the deputy refused to accept a cash bond in the amount that he (deputy) established until the Magistrate intervened, constituted cruel and unusual punishment and denied him "freedom from excessive bail." *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) mandates that the cruel and unusual punishment clause only applies to convictions for crimes. *Supra*, p. 664, 97 S.Ct. 1401. Also it is elementary that law enforcement officers, possess no statutory authority to grant bail, excessive or otherwise. See: 8 Am.Jur.2d, *Bail and Recognizance* § 9, 21; *Basista v. Weir*, 225 F.Supp. 619 (D.C.Pa.1964), *Aff'd. in part, rev'd. in part on other grounds*, 340 F.2d 74 (3rd Cir. 1965).

15. See Offense Reports.

revoke his beer and wine license.[16] The mere fact that he did not prevail in either endeavor does not establish either want of good faith or lack of probable cause.[17] Under the circumstances this court cannot find that the Sheriff acted in derogation of plaintiff's constitutional rights. Actually the record illustrates what seems to have been a conscientious effort to do his duty and to discharge his obligation as a police officer.

To sum up, the court finds no basis on which plaintiff's claim for a constitutional tort under § 1983 can rest. This court would also like to point out that all the incidents of which plaintiff complains were carefully studied. The above discussion deals with the major events, which is not to say that they were the only ones studied. The court, however, feels that they were the only ones with possible constitutional dimensions to merit discussion. For the above stated reasons, this court is persuaded that summary judgment for defendant should be granted.

AND IT IS SO ORDERED.

---

16. Plaintiff has the burden of proving the non-existence of probable cause. Otherwise, irrespective of motive the initiation of proceedings were legal. *Ruff v. Eckerd Drugs, Inc.*, 265 S.C. 563, 220 S.E.2d 649. See also: *Huffman v. Pursue,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Kugler v. Helfant,* 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975). Pursuant to the state law elements of public nuisance, *State v. Turner,* 198 S.C. 487, 18 S.E.2d 372, and upon examination of the record, there can be no doubt that defendant possessed probable cause to initiate the proceeding. Plaintiff has not alleged otherwise.

17. After studying the record it would be impossible for anyone to conclude otherwise. It is replete with facts, indicating defendant had a reasonable belief and probable cause that plaintiff's place of business constituted a nuisance and that the proceedings had a reasonable expectation of success. *Kugler v. Helfant,* 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975).