Abraham N. (Teller, J.
Defendants move for summary judgment. Plaintiff’s opposing affidavit requests summary judgment in his favor. The action is by an individual who, during the years of 1956 and 1957, purchased the common stock of defendant “ National ”, listed on the New York Stock Exchange. Defendant Andersen is an accounting firm and company auditor for “ National ”.
The five causes of action in the complaint are all predicated upon fraud and concealment. The first claims damages based on alleged concealment from “ National’s ” financial statements for 1955 and 1956 of service costs of pension plans, the particular claim being that, had he known of these charges, plaintiff would not have purchased the stock. The second pleads the same concealment and is based upon a stock listing agreement between “ National ” and the New York Stock Exchange, requiring disclosure in the form of financial reports of information affecting the value of the stock. The third actually pleads the same concealment but in the form of a breach of warranty on the part of Andersen with respect to its certification of “ National’s ” annual statements made in accordance with the listing agreement. The fourth similarly pleads with respect to Andersen’s certification of such annual statements issued to stockholders of “National”. The fifth is asserted against “National”, alleging that it knowingly aided and abetted Andersen in said concealment.
Plaintiff’s contention is that proper accounting procedure requires a footnote to financial statements for the year in which a plan involving material pension costs is adopted, providing *521 such information as the estimated annual charges, and a footnote providing similar information for any year when a plan is amended to a material extent. It would appear that if any claim thereunder exists, it could only be with respect to the statement for the year 1956, when the unfunded past service costs of “National’s ” pension plans increased from $2,500,000 to $12,500,000. However, this was payable out of future earnings over a period of 30 years for the salaried plan and 40 years for the hourly plan and was not deemed material by Andersen in view of the fact that the annual charge therefor would amount to only about $250,000 per year after taxes. In any event, there is no basis for the claim of concealment. “ National ” did file, in the detailed form required under the Securities Exchange Act, a report for the year 1956 with the Securities and Exchange Commission on or about April 30, 1957 which gave full information as to said pension cost, a copy thereof being subsequently filed with the Stock Exchange. Plaintiff claims that it was not until December 10,1958 that he learned through the latter source of this information.
The general rule is that the plaintiff may recover only the actual pecuniary loss sustained by virtue of a fraudulent inducement to purchase stock (Reno v. Bull, 226 N. Y. 546; see, also, Urtz v. New York Cent. & Hudson Riv. R. R. Co., 202 N. Y. 170; Sager v. Friedman, 270 N. Y. 472; Dress Shirt Sales v. Hotel Martinique Associates, 12 N Y 2d 339). Hotaling v. Leach & Co. (247 N. Y. 84) is clearly distinguishable, in that it was there understood by both parties that plaintiff had purchased the bond as an investment and therefore the loss was fixed as of the time that the security for the bonds was liquidated and the prorata share distributed. That case simply represents an application of the rule to a purchase known to be made as an investment. The measure of damages in such a situation may not be applied where the purchase is of common stock for purpose of appreciation in market value and particularly where the stock is still held (see People v. Straus & Co., 156 Misc. 642, 649).
Plaintiff purchased various lots of “ National ” stock at different dates and prices. His average cost, after sale of a number thereof and due allowance for stock dividends received, for the shares purchased in 1957 after the receipt of the report for the year 1956, which purportedly represented the material concealment in question, was about $37. It appears, also, that he made additional purchases in 1958 at an average cost of about $24 a share. Since the market value of the stock, when the complaint was verified on April 20,1959, was 37%, plaintiff had a substantial profit on his 1958 purchases and naturally asserted no claim *522 with respect thereto. It will be noted that when the complaint was verified, plaintiff also had no loss on his prior purchases. Moreover, at various times thereafter, plaintiff could have sold his prior holdings at a substantial profit, since the stock was selling at average prices between August 26, 1959 to September 4, 1959 and between December 24, 1959 to January 7, 1960 of about $42. Plaintiff’s argument that sales were in such small quantities that he could not have obtained said price for his holdings is contradicted by the evidence as to volume and prices then obtaining.
Thus, plaintiff’s position is clearly distinguishable from that of the plaintiff in the case cited by him, Singleton v. Harriman (152 Misc. 323, 324) where damages were awarded for the “ difference between the amount she could have obtained had she sold the stock upon learning of the fraud and the sum she paid for the stock.” Here, plaintiff could have sold not only without loss but at a profit.
Thus, plaintiff cannot recover in this basically fraud action because of a failure to show a pecuniary loss, an ingredient element of such a cause of action. The argument that plaintiff should have a right to recover punitive damages, in line with the decision in Walker v. Sheldon (10 N Y 2d 401) is misplaced; the Walker holding is confined to a certain type of fraud action and, in any event, a plaintiff must first show that he sustained actual damages.
Finally, it should, be observed that this appears, at most, to be a case of an accounting irregularity and not a deliberate concealment.
Defendants’ motion for summary judgment dismissing the complaint is accordingly granted. Settle order.