Frank BASISTA, Appellant,

v.

Walter WEIR, Chief of Police, City of Duquesne, Charles Scalese, Captain of Police, and Vernon Smith, Police Officer, All of the City of Duquesne, Allegheny County, Pennsylvania.

No. 14816.

United States Court of Appeals Third Circuit.

Argued June 3, 1964.

Decided Jan. 8, 1965.

Harry Alan Sherman, Pittsburgh, Pa., for appellant.

John E. Evans, Jr., Evans, Ivory & Evans, Pittsburgh, Pa., for appellees.

Before BIGGS, Chief Judge, and HASTIE and GANEY, Circuit Judges.

BIGGS, Chief Judge.

### I. STATEMENT OF FACTS

The plaintiff-appellant, Frank Basista, a resident of Duquesne, Allegheny County, Pennsylvania, brought suit under § 1 of the Civil Rights Act of 1871, 17 Stat. 13, 42 U.S.C.A. § 1983, the Fourteenth Amendment, section 1, and the Fourth Amendment of the Constitution of the United States. The defendants are Walter Weir, Chief of Police of Duquesne, Captain Charles Scalese, and Patrolman Vernon Smith of the Duquesne police force. Jurisdiction lies in the court below under § 1343, Title 28 U.S.C. See Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939).

Basista alleged that while in his home, Scalese and Smith or one of them, struck him in the back of his head without provocation and thus committed an assault and battery on him; arrested him without provocation or a warrant; denied him or failed to permit him to post bail or bond; and denied him counsel and medical aid while he was in jail.

The court below directed a verdict for Police Chief Weir on the basis that there was a failure of proof.[1] Motions for directed verdict on behalf of the defendants Smith and Scalese were denied. The case was submitted to the jury which found for the defendant Smith but against the defendant Scalese, awarding Basista $1500 as punitive damages but no compensatory damages. The trial judge set aside the jury verdict, granting Scalese's motion for a directed verdict. Rule 50(b), Fed.R.Civ.Proc., 28 U.S.C. Basista v. Weir, 225 F.Supp. 619 (1964). Basista has appealed.

The operative facts are as follows: In the early evening on July 17, 1959, Smith and Scalese, both on duty and cruising in a patrol car, answered a complaint received from a Mrs. Blake, a sister-in-law of Scalese. Being informed that Basista had been there and had annoyed her, the two officers then proceeded to the rear of Basista's home which was a short distance from Mrs. Blake's home. When they arrived to investigate the complaint, Basista testified that while he had been drinking, he was not drunk and that he invited the police officers into his home; that Scalese entered the house while Smith remained on the porch, seated on a concrete banister. The conversation between Scalese and Basista became heated and twice Basista challenged Scalese to a man-to-man fight behind a shed or in a rock quarry to settle their personal differences. Scalese refused.

At this point their stories as they appear from the testimony differ widely. Basista testified that he asked Scalese whether he had a warrant and upon Scalese's answer that he had none, asked Scalese to leave. Basista testified that after asking Scalese to leave he, Basista, sat down facing away from the door whereupon he was struck on the back of the head by Scalese or Smith and was then dragged from his house, in view of his wife, his children and his neighbors. He then began to resist violently whereupon Smith came to Scalese's aid and Basista alleges he was thrown to the ground face down, handcuffed, and placed in a police car; that while in the car Scalese whipped him about his head with a billy club; and that Smith with Scalese then drove him to the Duquesne jail.

The testimony of Scalese and Smith was that Basista became loud, abusive and used foul language which could be heard by neighbors and passersby and by children playing in the street. Scalese testified that he warned Basista that if he continued such behavior that he would be arrested for disorderly conduct. Scalese testified that Basista continued his tirade and attacked the Duquesne police force as a "bunch of yellow-bellies" at which point he, Scalese, told Basista that he was under arrest. At this point Basista is alleged to have pushed through the door knocking Scalese onto Smith,

---

1. Basista has not appealed from the order directing a verdict in favor of Weir.

both Smith and Scalese wrestled Basista to the ground, subduing him and handcuffing him but using no more force than was necessary. Basista is alleged to have then ceased struggling and entered the police car peaceably only immediately thereafter to kick Smith who was in the driver's seat, in the back at his left shoulder. After this, according to the officers' testimony, he braced himself against the left rear door of the car, and rammed his head and shoulder into Scalese's stomach as he was entering the right rear door. The officers testified that Smith drove the car to the police station with Scalese and Basista in the somewhat unusual position indicated. It is not disputed that the siren was used on at least a part of the trip to the police station.

Upon arriving at the police station Basista was placed immediately in a cell. He testified that he was in a dazed, injured, bleeding condition and requested medical aid, counsel and bail. It was not established to whom he made these requests. At any rate Scalese went about his duties and Smith returned to patrol. Both officers testified, and it was not contested, that once a prisoner is placed in a cell, as a matter of regular procedure it is the duty of the desk sergeant, who is also "turnkey," to inquire of a person in a cell as to whether he needs or wants medical aid, counsel, or bail.

In view of the jury's verdict, we must assume the facts were as testified to by the plaintiff's witnesses and must take those inferences from the evidence most favorable to Basista.

■■ On the following morning Basista was given a hearing before a magistrate of the City of Duquesne and he was found guilty of disorderly conduct [2] and fined $10 plus costs which were paid. He was held for court on two charges: (1) resisting arrest, and (2) assault and battery. The Court of Quarter Sessions of the Peace of Allegheny County, Pennsylvania, after a non-jury trial, dismissed the charge of resisting arrest because of the failure of the police to have a warrant and found Basista guilty of assault and battery as set out more particularly hereinafter. He failed to appeal from this judgment and it became final. He then brought this action.

Prior to the date on which the operative facts, the basis of this action, occurred, and on May 9, 1959, Basista had been arrested on a charge of beating his wife. He was incarcerated over night and when he failed to appear before the magistrate on the next morning,[3] a summary judgment was entered against him, and $200 which he had posted as bail was "forfeited." Basista attempted to obtain the return of this money the afternoon of July 17, 1959. He had a meeting with

2. Disorderly conduct is defined in Pa.Stat. Ann., tit. 18, § 4406 as: "Whoever wilfully makes * * * any loud, boisterous and unseemly noise or disturbance to the annoyance of the peaceable residents near by, or near to any public highway, road, street, lane, alley * * * whereby the public peace is broken or disturbed or the traveling public annoyed, is guilty of the offense of disorderly conduct * * *." The cardinal feature of the crime of disorderly conduct within the meaning of the penal code is public unruliness which can or does lead to tumult and disorder. Commonwealth v. Greene, 410 Pa. 111, 115, 189 A.2d 141, 144 (1963). The statute embraces conduct and noise which is loud and boisterous. The word "unseemly" conduct includes the case where a motorist affronts a second motorist with a threat to punch his nose, accompanied by loud and vile name calling, *attracting the attention of people near by*. Commonwealth ex rel. Jenkins v. Costello, 141 Pa.Super. 183, 14 A.2d 567 (1940). Although the disturbance complained of has to be to the general public it need not be shown that any specific persons of the general public were actually disturbed. Commonwealth v. Milkovits, 28 Leh.L.J. 412, 73 York 182 (1960).

It should be noted that no judgment of conviction from the Magistrate's Court has been made a part of the record in this action.

3. Basista insists that he had no notice of any hearing. The customary practice of the Duquesne Police Department was not to give written notice of such a hearing but to orally inform a defendant of it.

the Mayor and for some reason unexplained by the record this meeting was also attended by Scalese and Chief Weir. Basista was informed that the money was paid into the city treasury and could not be returned.[4]

It does not appear with certainty who notified the police or who swore out the complaint on the wife-beating charge against Basista, but the inference can be drawn that it was Mrs. Blake. It seems that it was in respect to this charge that Basista went to Mrs. Blake's home on July 17, allegedly to "straighten her out." While Captain Scalese investigated the complaint regarding wife-beating, he did not arrest Basista on that charge. It appears also that Smith drove the patrol car when Basista was arrested for wife-beating. Chief Weir took no part in the arrest. The impact of these facts here is not too apparent. They are included herein by way of background material as a possible explanation of the cause of some of Basista's difficulties with the police.

## II. WAS THERE A CAUSE OF ACTION UNDER THE CIVIL RIGHTS ACT?

The Civil Rights Act, § 1983, provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

█ The Act prescribes two elements as requisite for recovery: (1) the conduct complained of must have been done by some person acting under color of law; and (2) such conduct must have subjected the complainant to the deprivation of rights, privileges, or immunities

secured to him by the Constitution and laws of the United States. Marshall v. Sawyer, 301 F.2d 639, 646 (9 Cir. 1962). Of what rights was Basista deprived?

█ Basista asserts that he was denied the right to bail for a bailable offense, a right secured to him by the Eighth Amendment of the Constitution of the United States. Chief Weir in his testimony indicated that he, at Basista's request, telephoned a Mr. Pucci with regard to obtaining bail. It is undisputed that Chief Weir was told, and that this was relayed to Basista, that bail would be furnished Basista the next day. In addition, it is not disputed that no one acting on Basista's behalf came to the jail and tendered bond or bail to the desk sergeant, who was in charge. It thus appears that if Basista remained in jail overnight, it was not because he was denied bail by any of these defendants, but because no one appeared on Basista's behalf to post bail. There is insufficient evidence to support Basista's charge of denial of bail.

Basista further alleges that he was denied medical aid. While Basista offered evidence of his need for medical aid, it does not appear that he requested the defendants to provide such aid. Nor do we think, at least on the present record, that Basista has shown that any of the defendants had a duty to provide him with medical assistance. The uncontested testimony is, as we have stated, that the procedure followed by the Duquesne jail is that once a prisoner is secured in a cell, the desk sergeant, who also doubles as "turnkey," is in charge of the prisoner, and it is one of his official duties to inquire into the prisoner's need or desire for medical aid. Basista's charge in this respect also is without sufficient evidence to sustain it.

Basista next contends that the defendants denied him counsel guaranteed by the Sixth Amendment. That allegation also finds insufficient support in the evi-

---

4. A Duquesne Municipal Ordinance vests the sole power of returning such forfeits in the City Council and declares such action to be a legislative function.

dence. The record shows that a Mr. Staisey, an attorney, was notified of Basista's plight on at least three occasions. During the struggle at the Basista home, Mrs. Basista phoned Mr. Staisey and requested his assistance for her husband. Later, after Basista had been placed in a cell, Scalese received a phone call from Mr. Staisey informing him that counsel would appear to represent Basista at the hearing scheduled for the next morning. Chief Weir also testified that when he made a telephone call to a Mr. Pucci, apparently an attorney associated with Mr. Staisey, requesting bail for Basista, he, Weir, also inquired about counsel, and was told that both bail and counsel would be provided the next morning for Basista. It is not denied by Basista that he did in fact have counsel, not only at the hearing before the magistrate the following morning but also, apparently, when he appeared before the Quarter Sessions Court of Allegheny County. That his counsel did not appear at the jail the night that he was taken into custody was no doubt an inconvenience, but the apparently personal choice of his counsel not to appear until the hearing before the magistrate cannot support the allegation of a denial of counsel by the defendants.

██ It is clear from the foregoing that if Basista is to prevail in the suit at bar it must be on the ground that he was deprived of his right to be undisturbed in his home and deprived of his right not to be subjected to an unreasonable and illegal arrest, rights secured to him by the due process clause of the Fourteenth Amendment. Beck v. Ohio, 85 S.Ct. 223 (1964). That an individual may not be deprived of a federally protected right by an unlawful arrest and detention is no longer open to question. Cf. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Monroe v. Pape is the leading case involving Civil Rights Acts. In that case, a man's home was entered by police in the middle of the night, and he and his wife were made to stand in the center of their bedroom while the police ransacked their home, supposedly searching for evidence of a two year old burglary. The plaintiff was taken to jail without a warrant of any kind and was held incommunicado on an open charge and finally released without any charges being placed against him. The Supreme Court held that he was deprived of federally protected rights. Several circuits, including our own, have reached the same conclusion in a number of cases. See Nesmith v. Alford, 318 F.2d 110, 124 (5 Cir. 1963), cert. denied 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964); Cohen v. Norris, 300 F.2d 24 (9 Cir. 1962); Hughes v. Noble, 295 F.2d 495 (5 Cir. 1961); Brazier v. Cherry, 293 F.2d 401 (5 Cir. 1961); Coleman v. Johnston, 247 F.2d 273 (7 Cir. 1957); United States ex rel. Potts v. Rabb, 141 F.2d 45 (3 Cir.), cert. denied, 322 U.S. 727, 64 S.Ct. 943, 88 L.Ed. 1563 (1944).

██ The trial judge was disturbed that the case at bar may have arisen because of personal animosity between Basista and Scalese. The statutory words "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory" do not exclude from the purview of the Civil Rights statutes acts of an official who can show no authority for what he does. Monroe v. Pape, supra, 365 U.S. at 171–187, 81 S.Ct. 473. The misuse of power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law is action pursued under color of law within the meaning of 42 U.S.C.A. § 1983. United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941); Screws v. United States, 325 U.S. 91, 107–113, 65 S.Ct. 1031, 89 L.Ed. 1495 (1944); Picking v. Pennsylvania R. Co., 151 F.2d 240 (3 Cir. 1945). Assuming arguendo that Scalese's actions were in fact motivated by personal animosity that does not and cannot place him or his acts outside the scope of Section 1983 if he vented his ill feeling towards Basista by subjecting him to a physical beating, to humiliation before his neighbors, and to incarceration,

all under color of a policeman's badge.[5] The Civil Rights Act is not to be interpreted narrowly. Valle v. Stengel, 176 F.2d 697, 702 (3 Cir. 1949). In Hague v. C. I. O., 101 F.2d 774, 789 (3 Cir.), modified, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), we said "[s]uch an action sounds in tort." In Picking v. Pennsylvania R. Co., supra, 151 F.2d at 249 we stated, "[W]e are compelled to the conclusion that Congress gave a right of action sounding in tort to every individual whose federal rights were trespassed upon by any officer acting under pretense of state law." In Monroe v. Pape, supra, 365 U.S. at 187, 81 S.Ct. at 484, it was said that "Section 1979 [42 U.S.C.A. § 1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." While a specific intent to deprive a person of his constitutional rights is required under criminal sections of the Civil Rights Acts, 18 U.S.C. §§ 241, 242, neither specific intent nor purpose to deprive an individual of his civil rights is a prerequisite to civil liability under the civil provisions of the Civil Rights Act. See Stringer v. Dilger, 313 F.2d 536 (10 Cir. 1963). If Basista was forcibly taken from his home without just cause or provocation and subjected to physical abuse and unlawfully detained by Scalese, absence of motive, purpose, or intent on the part of Scalese to deprive Basista of his federally protected rights is immaterial.

### III. THE ASSERTED DEFENSE OF COLLATERAL ESTOPPEL

Scalese contends that Basista is estopped from bringing the present action for unlawful arrest and illegal detention because of the prior proceedings in the Court of Quarter Sessions of the Peace for Allegheny County in which he was found guilty of assault and battery upon police officers Scalese and Smith. No contention of estoppel is based on the proceedings against Basista before the committing magistrate. We cannot agree that there is an estoppel in the case at bar. Putting aside any question as to the mutuality of parties, Bruszewski v. United States, 181 F.2d 419 (3 Cir.), cert. denied, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950), and assuming *arguendo* that the doctrine of collateral estoppel would be available in actions arising under the Civil Rights Act under consideration in the circumstances at bar, we have not been furnished with a sufficient record of the proceedings of the Allegheny County Court of Quarter Sessions before which Basista was convicted of assault and battery upon the police officers. The indictment and the judgment of conviction rendered by the court on the first two counts is included among the documents which have been forwarded to us by the clerk of the court below, but these do not seem to have been admitted into evidence. But there is not contained in the record a transcript of Basista's trial before the Court of Quarter Sessions.[6] It appears from a reading of the transcript of the trial of the case below that no sure record of the proceedings in the Court of Quarter Sessions could be offered, that copies of the transcript offered to plaintiff's attorney differ from a copy which apparently was available to the defendants' attorney though this point is not entirely clear. In any event the transcript of the proceedings of Basista's trial before the Court of Quarter Sessions was not admitted in evidence and therefore there could be no collateral estoppel. Lacking a certified copy of the transcript we are uninformed as to what acts of Basista

---

5. Of course, we do not find that Scalese's actions were so motivated. We must take those inferences from operative facts most favorable to Basista.

6. We find in document No. 24, "Report of Conference of Counsel held Pursuant to Pretrial Order of the Court," the following: "Plaintiff is offering in evidence the following exhibits [sic], upon which ordinary proof is waived: Exhibit 15, Transcript of the Court of Oyer & Terminer, Quarter Session of the Peace of Allegheny County, Pennsylvania, at No. 612, September Session 1959."

furnished the foundation for his conviction on the charge of assault and battery. A possible reading of the state judgment is that the court found that Basista had not committed a breach of the peace and, therefore, the arrest was unlawful. This could explain the finding of not guilty on the charge of resisting arrest. Consistent with this view, one could interpret the conviction for assault and battery as a determination by the state court that Basista used more force than was reasonably necessary in resisting an unlawful arrest, or the conviction might stand on an erroneous conclusion that Basista had no right to resist even an unlawful arrest.[7] Perhaps with patient endeavor at the new trial a sufficient and adequate record of the proceedings of the Court of Quarter Sessions may be developed. There is no doubt, however, that, at best, the present Quarter Sessions judgment against Basista is ambiguous and therefore must be treated as insufficient to support collateral estoppel. Russell v. Place, 94 U.S. 606, 608, 24 L.Ed. 214 (1876). See also, Lawlor v. National Screen Serv. Corp., 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955).

IV. THE GRANTING OF JUDGMENT N. O. V. OR IN THE ALTERNATIVE, THE GRANTING OF SCALESE'S MOTION FOR A DIRECTED VERDICT

There being a valid cause of action, and a jury verdict in favor of Basista, was the trial court correct in granting Scalese's motion for a directed verdict, or, in the alternative, ordering a new trial? These questions require a discussion of the bases on which the court below acted.

■ A. *As to the Motion for a New Trial.* The trial judge in his opinion, 225 F.Supp. 619, 628, stated very candidly, among other things, the following: "I am of the opinion that the jury was not adequately instructed and this was error on my part, for which reason, in any event, a new trial should be allowed." However, the court below granted the defendant Scalese's motion for a "directed verdict * * * without prejudice, or, in the alternative, a new trial."[8]

We conclude that the statement by the court below as to the inadequacy of the instructions to the jury was correct. The court instructed the jury that "Article 6 [the Sixth Amendment of the Constitution of the United States] provided that in all criminal prosecution, the accused shall enjoy the right to a speedy and public trial by impartial jury of the state wherein the crime shall have been committed and to be informed of the nature and cause of the accusation, to be confronted with witnesses against him and to have processes for obtaining witnesses and assistance of counsel for his defense."

As was pointed out in an earlier point in this opinion, there was not sufficient evidence to support a finding by the jury that Basista was denied any of the rights guaranteed to him by the Sixth Amendment. At the close of the charge, Scalese, through his counsel, made a sufficient objection to the portion of the charge quoted, stating that the Fourth, Sixth and Fourteenth Amendments of the Constitution were not applicable under the facts of the case. The objection was in error as to the Fourth and Fourteenth Amendments, but the objection to that portion of the charge based on the Sixth Amendment was valid. Scalese raised the point in his motion for a new trial, and it has been raised here. The error in the charge was substantial and prejudicial.

---

7. As was stated by the Supreme Court in United States v. Di Re, 332 U.S. 581, 594, 68 S.Ct. 222, 228, 92 L.Ed. 210 (1948), "One has an undoubted right to resist an unlawful arrest, and courts will uphold the right of resistance in proper cases." See also, John Bad Elk v. United States, 177 U.S. 529, 20 S.Ct. 729, 44 L. Ed. 874 (1900).

8. We assume that the phrase "without prejudice" was intended to mean that the new trial should be without prejudice because of the directed verdict, if this court saw fit to require a new trial.

It should also be noted that the court below charged under items "3", "4", and "5",[9] respectively, as follows, "That the defendants failed to permit him to post bond or bail.", "That the defendants failed to provide him with an attorney * * *," and "That the defendants failed to provide him with a doctor." The court charged in respect to these items that "The plaintiff has presented evidence that he was deprived of a bond, an attorney * * * and a doctor on the July 17th occasion. Under our law, an arrested person is entitled to an attorney, a doctor where needed, and to bond except in certain instances, of which this is not one, but it would appear that if such denial of any of these took place, that it would have been not on the part of the arresting officers, but rather on the part of the desk sergeant, since it appears that the arresting officers' duty towards the prisoner stopped when they turned him over to the sergeant."

"However, you have heard the evidence and it will be for you to determine whether or not the defendants had violated the civil rights of the plaintiff in rejecting any demand by him for a bond, an attorney or doctor."

It is apparent that the court below did not completely withdraw the issues presented by items "3", "4", and "5" from consideration by the jury. His action in this respect was indecisive, and, in our opinion, incomplete. As we have stated at an earlier point in this opinion, there was insufficient evidence to sustain the allegations of any of the three items referred to and the court below should not have submitted them or any of them as issues to the jury. We conclude it was prejudicial error for the trial court to have done so.

■ We cannot, of course, determine in advance what the state of the evidence will be as developed at the new trial on remand, but if upon the new trial evidence should be presented which will justify submission to the jury, justiciable issues as to whether Basista was de-prived of civil rights cognizable under the Civil Rights Act because of his arrest or incarceration, as they are presented on the present record, the court should charge that Basista had "an undoubted right to resist an unlawful arrest * * *" to a reasonable degree. See United States v. Di Re, 322 U.S. 581, 594, 68 S.Ct. 222, 92 L.Ed. 210 (1948). At the trial as held, since the verdict was in favor of Basista, he took no harm from the failure of the court to charge as indicated.

■ B. *As to the Granting of a Motion for Directed Verdict Pursuant to Rule 50(a)*. The court below in its opinion, 225 F.Supp. 619, 627–628, seems to take the position that the Civil Rights Act upon which Basista's case is bottomed is not available to him unless he first shows a deficiency or disadvantage "by which he was handicapped, obstructed, or judicially prejudiced in the state court." The trial judge went on to say: "None of these [factors] appear here and this federal court ought not to be used as a vehicle without good cause first being shown that it was a necessary vehicle to the complainants [sic] not used for ulterior purposes or in conflict with the principles upon which good government must rest. It was not proven in the evidence of this case that the state court failed to properly adjudicate the facts.

"While it is conceivable that the state judicial processes deprived the plaintiff of his federally protected rights, yet to sustain an action under the Civil Rights Act, the state court proceedings must have been a nullity, or with a purpose of depriving a person of his rights. To hold otherwise, would open the door to aggrieved state litigants and set up the federal courts as the arbiter of the correctness of every state decision," citing Bottone v. Lindsley, 170 F.2d 705 (10 Cir. 1948) and Johnson v. Stone, 268 F.2d 803 (7 Cir. 1959).

The court below went on to say "From all of the evidence presented in this case,

9. See p. 446 of the transcript of the testimony.

I am not convinced that the plaintiff proved anything more than an action based on personal animosity, and not on any violation of federally protected rights."

The two cases cited by the trial court are inapposite. In Bottone v. Lindsley, supra, the complaint alleged that by state court proceedings the defendants had conspired to deprive the plaintiff of his property without due process of law and equal protection of the laws in violation of the Fourteenth Amendment. In particular it was alleged that the state court wrongfully assumed jurisdiction of the subject matter, denied the plaintiff a jury trial, and allowed a cross-claim against him. In Johnson v. Stone, supra, the defendant in the federal case charged that counsel for the plaintiffs in a state court proceeding in the course of the trial misappropriated exhibits, introduced perjured, improper, slanderous and irrelevant testimony and made improper, irrelevant, slanderous and untrue statements. In short, both cases were civil actions brought in state courts and if they involved the violation of constitutional rights at all, the alleged violations were such as could have been corrected by further state court proceedings.

The court below seems to have approached this aspect of the case at bar from two positions. The first seems to be based on collateral estoppel. We have already dealt with this subject at length in this opinion under heading "III", supra, and have concluded that the defense of collateral estoppel was not available to Scalese here. The second ground to which the trial judge would seem to refer is apparently based on the theory that the doctrine of exhaustion of state remedies was available as a defense to Scalese. The principle of exhaustion of state remedies is not applicable here. In McNeese v. Board of Education, 373 U.S. 668, 674, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622 (1963), a case involving deprivation of rights under the Fourteenth Amendment, Mr. Justice Douglas said: "We have, however, in the present case no underlying issue of state law controlling this litigation. The right alleged is as plainly federal in origin and nature as those vindicated in Brown v. Board of Education, 347 U.S. 483 [74 S.Ct. 686, 98 L.Ed. 873]. Nor is the federal right in any way entangled in a skein of state law that must be untangled before the federal case can proceed. For petitioners assert that respondents have been and are depriving them of rights protected by the Fourteenth Amendment. It is immaterial whether respondents' conduct is legal or illegal as a matter of state law. Monroe v. Pape, * * * 365 U.S., at 171–187, [81 S.Ct. (473), at 475–484]. Such claims are entitled to be adjudicated in the federal courts. Monroe v. Pape, supra, 365 U.S. at 183, [81 S.Ct. (473) at 481]; Gayle v. Browder, 352 U.S. 903 [77 S.Ct. 145, 1 L.Ed.2d 114], affirming 142 F.Supp. 707; Borders v. Rippy, 5 Cir., 247 F.2d 268, 271. Cf., e. g., Lane v. Wilson, 307 U.S. 268 [59 S.Ct. 872, 83 L.Ed. 1281]; Smith v. Allwright, 321 U.S. 649 [64 S.Ct. 757, 88 L.Ed. 987]; Schnell v. Davis, 336 U.S. 933 [69 S.Ct. 749, 93 L.Ed. 1093], affirming 81 F.Supp. 872; Turner v. Memphis, 369 U.S. 350 [82 S.Ct. 805, 7 L.Ed.2d 762]." What was said in the McNeese case is apposite here.

The main basis, if not the sole ground, for the granting of Scalese's motion for a directed verdict seems to have been the conclusion of the trial judge that no cause of action was stated and proved by Basista under the Civil Rights Act. The trial judge was in error in so concluding and the granting of a directed verdict in Scalese's favor cannot be sustained.

### V. DAMAGES

In this court Scalese has raised the question as to whether or not damages were properly pleaded and proved. Basista alleged in his complaint that, because of the serious injuries inflicted upon him, he had "lost income" from his regular employment and had been compelled to incur indebtedness for medical care, and that a previous nervous heart condition was aggravated, and that he was humiliated and embarrassed "as

well as deprived of his constitutional and lawful rights." He claimed $110,000 damages.

■ At a pretrial conference Basista's counsel stated that Basista was "only relying upon the aggravation, the penalty damages under the law." Counsel for Scalese stated that as he understood it, Basista was "not seeking compensatory damages here, but is only asking for punitive damages." Basista's counsel replied, "I said there is no special damage except, well, compensatory or punitive but both for the same thing. It is a violation of the civil rights." Counsel for Scalese then asked, "Are you asking just compensatory damages—just punitive damages?" Basista's counsel then replied, "It's the basis, of course, compensatory damages would be simply the penalty of the law. It is really punitive in this case. When you are talking about this case, * * * you'd say, it's involved in the same thing. There is no medical. There is no wage loss. There's [sic] no other specials. It strictly arises from a violation of civil rights by the means of the arrest, the incarceration and denial of bond and so forth." Basista's counsel may have been referring to Rule 9(g), Fed.R.Civ.Proc., 28 U.S.C., which states: "When items of special damage are claimed they shall be specifically stated.", but this also is far from clear. There was further colloquy between the court and counsel upon this subject, but what transpired is not illuminating. What was said by counsel at the pretrial conference was made the subject of the pretrial order under the practice of the court below. It is, of course, established law that a pretrial order when entered limits the issues for trial and in substance takes the place of pleadings covered by the pretrial order. See Rule 16, Fed.R.Civ.Proc., 28 U.S.C. But obviously, the pretrial order here is far from definitive in respect to the issue of damages as we have shown.

■ In this court Scalese's counsel raises the issue, seeking to apply the law of Pennsylvania, that there can be no exemplary or punitive damage where actual damage is not shown. See Bruce Lincoln-Mercury, Inc. v. Universal C. I. T. Credit Corp., 325 F.2d 2, 22 (3 Cir. 1963). But Scalese's counsel made no objection to the court's submission to the jury of the issue of exemplary damages, and, therefore, must be deemed to have waived any objection to this portion of the court's instructions. See Rule 51, Fed.R.Civ.Proc.

■ Section 1983, Title 42 U.S.C.A., is completely silent as to the kind of damages which may be awarded an injured plaintiff in a civil rights suit such as that at bar. The statute does not use the word "damages," but merely states that the offending person "shall be liable to the party injured in an action at law." Obviously, this connotes damages of some kind, but goes no further. 42 U.S.C.A. § 1988 provides that in civil rights cases the United States District Courts shall have jurisdiction for the protection and vindication of the civil rights of all persons and shall exercise that jurisdiction "in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against the law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty." [10]

10. The statute, derived from an Act of Congress of 1866, antedates the long-since changed outlook on "the general common law." See Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Yet this statute retains vestiges of that now rejected view of the law espoused by Mr. Justice Story in

Section 1988 has not been construed by any court insofar as we have been able to ascertain in respect to the identical issue that we have before us. The mandate the statute imposes seems clear, however, without judicial interpretation. It provides that the laws of the United States shall be employed in vindicating civil rights in civil suits insofar as they are suitable to the subject but where those laws "are not adapted to the object, or are deficient," then the law of the State wherein the court of the United States sits shall be applied to supply the deficiency, so far as the constitution and statutes of the state are not inconsistent with the Constitution and laws of the United States.

 The Civil Rights Acts were brought into being at a critical time in the history of the United States following the Civil War. They were intended to confer equality in civil rights before the law in all respects for all persons embraced within their provisions. We believe that the benefits of the Acts were intended to be uniform throughout the United States, that the protection to the individual to be afforded by them was not intended by Congress to differ from state to state, and that the amount of damages to be recovered by the injured individual was not to vary because of the law of the state in which the federal court suit was brought. Federal common law must be applied to effect uniformity, otherwise the Civil Rights Acts would fail to effect the purposes and ends which Congress intended.[11]

---

Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865 (1842). See Friendly, In Praise of Erie —And of the New Federal Common Law, 39 N.Y.U.L.Rev. 383 (1964). See dissenting opinion of Mr. Justice Clifford in Tennessee v. Davis, 100 U.S. 257, 272 at 299, 25 L.Ed. 648 (1879).

11. As we have indicated, the laws of the several states relating to damages, compensatory, nominal, and punitive, differ widely. The majority rule seems to be set out in Hilbert v. Roth, 395 Pa. 270, 276, 149 A.2d 648, 652 (1959), in which the Supreme Court of Pennsylvania stated: "It is well recognized that no award for punitive damages may be made where actual damage has not been suffered. * * * The right to punitive damages is a mere incident to a cause of action—an element which the jury may consider in making its determination—and not the subject [matter] of the action in itself." It would seem that the Pennsylvania law has two requirements, one being that punitive damages are not recoverable absent a showing of actual damages, and second, if punitive damages are recovered they must bear a reasonable relationship to the amount of actual damages. Suflas v. Cleveland Wrecking Co., 218 F.Supp. 289 (E.D.Pa., 1963).

Other cases following the general rule are, e.g., Hamerly v. Denton, 359 P.2d 121 (Alaska 1961); Coy v. Advance Automatic Sales Co., 39 Cal.Rptr. 476 (1964); Lundquist v. Marine Engineers Beneficial Ass'n No. 97, Inc., 208 Cal. App.2d 390, 25 Cal.Rptr. 250 (1963); Holliday v. Great Atl. & Pac. Tea Co.,

256 F.2d 297 (8 Cir. 1958) (citing Mo. law); Teich v. Arthur Anderson & Co., 40 Misc.2d 519, 243 N.Y.S.2d 368 (1963); Cf. Winkler v. Hartford Acc. & Indem. Co., 66 N.J.Super. 22, 29, 168 A.2d 418, 422 (1961); Widemshek v. Fale, 17 Wis. 2d 337, 117 N.W.2d 275 (1962); see generally, annot. 17 A.L.R.2d 527–550.

As indicated some state courts hold that a claim for exemplary damages alone cannot constitute a cause of action. Browand v. Scott Lumber Co., 125 Cal.App. 2d 68, 269 P.2d 891 (1954); Ress v. Rediess, 130 Colo. 572, 278 P.2d 183 (1954); Gill v. Montgomery Ward & Co., Inc., 284 App.Div. 36, 129 N.Y.S.2d 288 (1954); Hilbert v. Roth, supra, 395 Pa. at 276, 149 A.2d 648; General Ins. Corp. v. Harris, 327 S.W.2d 651 (Tex. Civ.App.1959); Zedd v. Jenkins, 194 Va. 704, 74 S.E.2d 791 (1953); Toler v. Cassinelli, 129 W.Va. 591, 41 S.E.2d 672 (1947).

Some states hold that there must be a finding and award of actual damages. E.g., Durham v. New Amsterdam Cas. Co., 208 F.2d 342 (4 Cir. 1953) (Va. Law); Nance v. Sheet Metal Workers International Ass'n, 12 Utah 2d 233, 364 P.2d 1027 (1961); Richard v. Hunter, 151 Ohio St. 185, 85 N.E.2d 109 (1949).

Some states require only a showing of actual damages, but not necessarily an award. E.g., Johnson Publishing Co. v. Davis, 271 Ala. 474, 124 So.2d 441 (1960); Hinson v. A. T. Sistare Constr. Co., 236 S.C. 125, 113 S.E.2d 341 (1960). South Carolina has allowed punitive damages to stand on the presumption that

We can perceive no particular in which the federal common law is deficient in respect to the issue of damages under the Civil Rights Act on which the suit at bar is based unless it be in respect to the aspect of punitive or exemplary damages. But we cannot conclude that the federal common law may be applied in respect to compensatory or even nominal damages while state law, here the law of Pennsylvania, would be applicable on the issue of exemplary or punitive damages. To so hold would be to create a legal hybrid of an incredible and unworkable kind. In this connection we call attention to the decision in Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946), in which it was alleged that an unlawful search and seizure and an arrest had been made by government agents. While the question presented in the cited case was primarily one of jurisdiction and we recognize that it is not so here, nonetheless the words employed by Mr. Justice Black seems apposite: "Moreover, where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief.", citing Marbury v. Madison, 1 Cranch 137, 162, 163, 2 L.Ed. 60 (1803); Texas & N. O. R. Co. v. Brotherhood of Clerks, 281 U.S. 548, 569, 570, 50 S.Ct. 427, 74 L.Ed. 1034 (1930).[12]

We are of the opinion, as we have stated, that the federal common law of damages commands the issue of damages in the case at bar. We are also of the view that the federal law permits the recovery of exemplary or punitive damages. As a matter of federal common law it is not necessary to allege nominal damages and nominal damages are proved by proof of deprivation of a right to which the plaintiff was entitled. In Press Pub. Co. v. Monroe, 73 F. 196, 201 (C.C.S.D.N.Y.), appeal dismissed, 164 U.S. 105, 17 S.Ct. 40, 41 L.Ed. 367 (1896), it was asserted by the defendant that when no actual damages were proved exemplary damages should not be allowed, but the Circuit Court, by Circuit Judge Lacombe, stated: "Some courts have held that it is unfair to allow the plaintiff to recover not only all the loss

---

nominal damages were merged with the award of punitive damages. Hinson v. A. T. Sistare Constr. Co., supra; cf. Barber v. Hohl, 40 N.J.Super. 526, 123 A.2d 785 (1956).

At least one jurisdiction permits exemplary damages as an independent basis for recovery. E.g., see First Nat. Realty Co. v. Weathers, 154 A.2d 548 (Mun.Ct. App.D.C.1959), and Wardman-Justice v. Petrie, 59 App.D.C. 262, 39 F.2d 512, 69 A.L.R. 648 (1939).

Nominal damages will support exemplary or punitive damages in New York, Underwriters' Laboratories, Inc. v. Smith, 41 Misc.2d 756, 246 N.Y.S.2d 436 (1964), but not in Iowa, Amos v. Prom, Inc., 115 F.Supp. 127 (D.C.Iowa 1953).

Since the statutory authority upon which the actions are based are not the same, it is not important that state courts may also have jurisdiction by virtue of state statutes. Comparatively few states have Civil Rights Acts of their own.

If state law is followed, it appears that within the Third Circuit a plaintiff bringing an action under the Civil Rights Act, 42 U.S.C.A. § 1983, could recover exemplary damages in New Jersey on the presumption that nominal damages were merged with the award of punitive damages, Barber v. Hohl, supra 40 N.J.Super. at 789, 123 A.2d 785, but not in Pennsylvania, Hilbert v. Roth, supra. Such an inequitable result would allow a New Jersey resident to be compensated for a denial of his civil rights, but not a Pennsylvania resident. This result would be required in a diversity action, but should not be allowed where the jurisdiction of the court is statutory and exclusive.

12. In this connection we are not unmindful of such decisions as Missouri Pac. Ry. v. Humes, 115 U.S. 512, 523, 6 S.Ct. 110, 114, 29 L.Ed. 463 (1885) in which it was stated: "The injury actually received is often so small that in many cases no effort would be made by the sufferer to obtain redress, if the private interests were not supported by the imposition of punitive damages." See also Day v. Woodworth, 13 How. 363, 54 U.S. 363, 371, 14 L.Ed. 181 (1851); Milwaukee & St. Paul Ry. v. Arms, 91 U.S. 489, 493, 23 L.Ed. 374 (1875).

he has actually sustained, but also the fine which society imposes on the offender to protect its peculiar interests. But if it be once conceded that such additional damages may be assessed against the wrongdoer, and, when assessed, may be taken by the plaintiff,—and such is the settled law of the federal courts,—there is neither sense nor reason in the proposition that such additional damages may be recovered by a plaintiff who is able to show that he has lost $10, and may not be recovered by some other plaintiff who has sustained, it may be, far greater injury, but is unable to prove that he is poorer in pocket by the wrongdoing of defendant." See also Wilson v. Vaughn, 23 F. 229 (C.C.D.Kan.1885), in which the plaintiff was allowed to recover damages for wilful refusal of county commissioners to levy a tax on taxable property in a township to pay for a judgment held by the plaintiff against the township. The jury had given the plaintiff one dollar damages. A motion to set aside the verdict and for a new trial was denied. In Nixon v. Herndon, 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759 (1927), the plaintiff, a Negro, a qualified voter, was denied the right to vote at a state primary election. He sued, laying the damages at $5,000. The defendants sought to dismiss the complaint on the ground that the question was political and therefore the district court was without jurisdiction to entertain the suit. Though no Civil Rights Act was apparently invoked, the Supreme Court, by Mr. Justice Holmes, held that there was an obvious infringement of the Fourteenth Amendment and that the court had jurisdiction. The "private damage" referred to in the opinion seems to have consisted solely of depriving the plaintiff of his right to vote and it was stated that that damage was caused "by political action." It does not appear that the wrong effected any damage in dollars or cents to the plaintiff. In furtherance of our interpretation of Nixon v. Herndon we refer to Wayne v. Venable, 260 F. 64,

66 (8 Cir. 1919), in which Circuit Judge Sanborn stated that an action for damages in a federal court would lie by a qualified voter for wrongful deprivation of his Constitutional right to vote for a member of Congress at a general election. "In the eyes of the law this right [to vote] is so valuable that damages are presumed from the wrongful deprivation of it without evidence of actual loss of money, property, or any other valuable thing, and the amount of the damages is a question peculiarly appropriate for the determination of the jury, because each member of the jury has personal knowledge of the value of the right.", citing Scott v. Donald, 165 U.S. 89, 17 S.Ct. 265, 41 L.Ed. 632 (1897), and Wiley v. Sinkler, 179 U.S. 58, 65, 21 S.Ct. 17, 45 L.Ed. 84 (1900). While a deprivation of a right to vote and deprivation of personal liberty caused by an illegal arrest and wrongful incarceration are, of course, not identical, nonetheless the decisions cited above provide a useful and persuasive analogy.[13] We are of the view that the same principles of the federal common law relating to damages in the cases cited are equally applicable in all Civil Rights cases.

We conclude in view of the foregoing that Basista would be entitled to sustain his judgment were it not for the errors in the trial which we have pointed out.

## VI. CONCLUSION

As we have stated, whether or not Basista waived his claim to compensatory damages is far from clear. Upon remand we think it would be of substantial aid to the parties and to the court if the case were again pretried delimiting the legal issues and a pretrial order were entered in strict conformity with Rule 16, albeit this procedure is left to the discretion of the trial court.

That portion of the judgment of the court below directing a verdict in favor of Scalese will be reversed. That portion of the judgment ordering a new trial will be affirmed.

13. Cf. 28 U.S.C. § 1343(4).