**Ronald MAGNETT, Plaintiff,**

v.

**Joseph PELLETIER, Chief of Police of the City of New Bedford, et al., Defendants.**

**Civ. A. No. 71-229-C.**

United States District Court,
D. Massachusetts.

June 22, 1973.

---

10. Transcript of Special Court Martial at 10, 17–18.

Melvyn H. Zarr, Ernest Winsor, Boston, Mass., for plaintiffs.

Paul F. Markham, Boston, Mass., for defendants.

## OPINION

CAFFREY, Chief Judge.

This is a civil action which was tried to the court without a jury on the basis of a complaint, as amended, alleging deprivation under color of state law, of rights, privileges and immunities secured by the Fourteenth Amendment to the United States Constitution. Jurisdiction of this court is invoked on the basis of 28 U.S.C.A. § 1343 on a cause of action arising under 42 U.S.C.A. § 1983. The complaint as filed was brought on behalf of nine individual plaintiffs, three unincorporated associations and one non-profit corporation.

The defendants originally named were Joseph Pelletier, Chief of Police of the City of New Bedford, Sergeant Raymond Eugenio, and New Bedford police officers Ronald Sylvia, Donald Couto and Alan Mills. During the pre-trial stages of the case amendments to the pleadings eliminated all plaintiffs other than Ronald Magnett and also eliminated as parties-defendant Sergeant Eugenio and Officers Couto and Mills. Sergeant William Rhodes, Jr. was added as a party-defendant.

As submitted to the court for ultimate decision, the amended complaint contains two separate claims. Mr. Magnett's first claim is that Sergeant Rhodes and Officer Sylvia deprived him of his right to be secure in his home from a warrantless, unreasonable search and from assault and police intimidation in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. On the basis of this first claim, plaintiff seeks to recover $2500 in actual damages against Sergeant Rhodes and Officer Sylvia, jointly and severally. He also seeks punitive damages in the same amount against each of these defendants.

Plaintiff's second and separate claim is that Chief Pelletier of the New Bedford Police Department has deprived him of his civil rights by the Chief's failure to reopen an administrative investigation into the events which underlie this litigation. Plaintiff seeks an order from this court requiring Chief Pelletier to reopen the Police Department investigation of a written complaint filed by Mr. Magnett with Chief Pelletier on August 3, 1970. Plaintiff also seeks an order from this court directing Chief Pelletier upon the conclusion of that investigation to take appropriate disciplinary action against Sergeant Rhodes and Patrolman Sylvia. Finally, plaintiff requests that the court direct Chief Pelletier to institute measures for the easy and accurate identification of New Bedford police officers.

After trial I find and rule as follows. In July of 1970 in the City of New Bed-

ford, Massachusetts, disturbances approaching riot conditions took place for several days prior to the incident which is the basis of this action. During those several days the following events occurred: buildings and automobiles were set on fire; sniper fire was reported; New Bedford Police officers were stoned from buildings in the section of the city in which the civil disorders occurred; while on duty, members of the police and fire departments were subjected to considerable vilification and harassment and were further subjected to the risk of physical injury because of stones, bottles and other missiles being thrown at them in the darkness. A nine P.M. curfew was imposed and the streets in the troubled section of the city were patroled by police officers wearing rior gear, including helmets and nightsticks.

On the night of July 29, Sergeant Rhodes began his tour of duty at 10 o'clock. His responsibilities included keeping the streets in the troubled area of New Bedford clear for vehicular and pedestrian traffic and watching for snipers. He was in charge of a group of approximately 14 police officers in the area of South First Street. All street lights had been extinguished in the vicinity of South First Street. Sergeant Rhodes testified, and I find, that when he came on duty, fires were burning on Water Street, Blackman Street and on First Street. He lined up his detachment of police officers on the east side of First Street near the building in which plaintiff was babysitting. Sergeant Rhodes spaced his men about four feet apart and directed them to walk north toward Blackman Street where a car was on fire in the middle of the intersection. As the officers walked toward Blackman Street, they were subjected to obscenities and profanities emanating from a group of people on a porch of an apartment house. Sergeant Rhodes shouted a warning to the persons on the porch of number 659 to the general effect that if any additional assaults were made on the police officers by the occupants of that building, arrests

would be made. Sergeant Rhodes testified that as they were passing the building the officers were showered with bottles and stones which came from the general direction of the building at number 659 South First Street. He stated that the detachment proceeded along South First beyond number 659 to the scene of the automobile fire where it was learned that the fire had been brought under control by the Fire Department. The officers returned down South First Street, remaining on the south side of the street. He stated that as they neared number 659 they were again subjected to assaults by flying projectiles and verbal abuse. Sergeant Rhodes ordered two members of the detachment to accompany him into the house at number 659 South First Street. Officers Sylvia and Carr entered that building with Sergeant Rhodes. Sergeant Rhodes testified and I find that the police officers heard the sound of feet running up the stairs as they entered the three-story wooden frame multi-tenement house. The police found no exit in the hall of the first floor and so proceeded to the second floor from which point plaintiff Magnett was observed at the top of the stairs leading from the second to the third floors.

The evidence as to what transpired from this point forward is sharply contradictory. Plaintiff, a black construction laborer with a 10th grade education, testified that he had resided in New Bedford for 18 years, that he was on the date of this incident the father of four children aged 10, 9, 7 and 4, that he had been married for five years and separated from his wife for 2½ years, that the children lived with their mother at an apartment at 659 South First Street, New Bedford, and that just before midnight on July 29, 1970, he was present in his wife's apartment in which the four children were sleeping. His wife was visiting her mother in another apartment in the building at the time of this incident. Magnett testified that he heard a commotion, heard voices and steps which sounded as if they were

coming from the second to the third floor of the building; that he put on a light in the hall; and that he opened the door of his wife's apartment whereupon he saw Sergeant Rhodes. He testified that he told the Sergeant that he did not wish him to enter the apartment as it contained only the four sleeping children. According to Magnett, the Sergeant responded to him, "You are a wise black S.O.B.," and raised a nightstick, and pushed plaintiff into the apartment, knocking him into a chair about eight feet from the door. He testified that three other police officers entered the apartment after the Sergeant, held him in the chair and told him to "shut his goddam mouth" each time he attempted to protest. He further testified that he was held by one officer on either side of the chair; that each of the officers held him by an arm and shoulder; that Rhodes swung a nightstick at him but did not actually touch him with the stick. He further testified that Patrolman Sylvia entered the bedroom in which the four children were sleeping and in so doing woke up his (Magnett's) daughter Lisa, whereupon Sylvia left the bedroom and informed the other police that there was no one in the apartment "but the four kids." Magnett further testified that when he told the officers that this was what he had attempted to tell them before the entry, he was told to "shut his goddam mouth" and was also told that if any other incident arose in that building, the police would return and kick in the doors. On cross-examination plaintiff conceded that there were disturbances that summer; that he had heard bottles being broken; and that there were fires, noises and shouting in the neighborhood. He also stated that there had been fires within a block of the apartment in question. He estimated the police were in the apartment between three and four minutes and that Officer Sylvia was in the children's bedroom between 25–30 seconds.

Sergeant Rhodes, Officer Carr and Officer Sylvia testified in a manner sharply contradictory to the testimony given by plaintiff as to this incident. The Sergeant testified that when he observed Magnett on the third floor, he asked him what he was doing in the building and if he was responsible for the stones and glass which had been thrown at the officers in his detachment. The Sergeant asked Magnett whether any one else was with him. Magnett, according to the Sergeant, responded that there were four kids in the apartment and was insistent that the police satisfy themselves as to the truth of this statement by looking for themselves. Sergeant Rhodes said the police originally declined this invitation, but Magnett persisted in his request that the police check the apartment to satisfy themselves that no one who had been involved in rock or bottle throwing was hiding therein. Whereupon Sergeant Rhodes, followed by Carr and Sylvia, did enter the apartment through a door which had already been opened by Magnett (Magnett concedes that he opened the door but denies inviting or insisting that the police enter). Sergeant Rhodes testified that Magnett raised his fists and advanced towards Rhodes after Rhodes entered the apartment, whereupon Officer Carr stepped from behind Rhodes and pushed Magnett into an upholstered chair three or four feet away from where Magnett was standing. The Sergeant denies that he or any other officer ever swung a nightstick at plaintiff while the officers were in Mrs. Magnett's apartment, or at any other time. Sergeant Rhodes' estimate of the time the police were in the apartment is less than a full minute. Contrary to testimony of plaintiff, Sergeant Rhodes stated that he and each of the other officers were wearing their police badges pursuant to an order of the New Bedford Police Department to remove their badges only if there was heavy sniper fire. Sergeant Rhodes testified that no officer actually entered the children's bedroom or put the lights on in that bedroom.

Sergeant Rhodes' testimony was substantially corroborated by Officer Frank

Carr, who has been a member of the New Bedford Police Department for eight years. Officer Carr testified that he was wearing Badge No. 7 and is the only member of the New Bedford Police Department who wears that number. Officer Ronald Sylvia, a 24 year member of the New Bedford Police Department, testified and substantially corroborated the testimony of Sergeant Rhodes and Officer Carr as to the plaintiff's yelling profanities at the police in the hallway, and as to his insistence that police verify the truth of his statement that only sleeping children were in the apartment. He testified that he was wearing his badge No. 179 at the time of the incident.

■ On the basis of this sharp conflict between the testimony of the plaintiff on the one hand, and that of the three police officers on the other hand, I find the following: that during the last week of July 1970 conditions in the City of New Bedford were extremely turbulent and riotous; that the situation which produced the nine P.M. curfew also produced serious risks of physical injury to members of the police and fire departments; that the police officers in particular were subjected to obscenities of a type calculated to strain the patience of any normal human being; and more importantly, that the officers while on foot patrol after dark, particularly in areas in which the street lights were not operational, such as South First Street, were exposed to rocks, bottles and other projectiles thrown from darkened buildings. More specifically, I find that a substantial number of objects, coupled with the usual obscenities, were thrown at police officers in Sergeant Rhodes' detachment as they walked up South First Street across from the building located at number 659 South First Street. I find that the persons on the porch of that building were warned by Sergeant Rhodes to cease and desist and were also warned that arrests would follow if the assaults were not terminated. I find that despite the warnings, the officers were again assaulted by some persons who threw objects at the officers from the darkened building and that the police were acting reasonably in entering the building at number 659 for the purpose of putting a stop to the throwing of rocks and bottles from the upper portions of that building and also for the purpose of arresting any one who was found actually perpetrating the assaults.

I further find that plaintiff did inform the police that there was no one in his estranged wife's apartment but sleeping children, that he did not invite the officers in, although he did open the door and stood by the open doorway, and that the police entered as part of their efforts to secure the building.

■ I find that Mr. Magnett did not brandish his fists at Sergeant Rhodes, since such conduct by an unarmed person of Mr. Magnett's size and weight against three burly officers equipped with riot gear and carrying nightsticks, would border on sheer insanity. There is no evidence that plaintiff was insane, drunk or under the influence of drugs. I am not persuaded that either an assault or a battery was committed on Mr. Magnett by Sergeant Rhodes or Officer Sylvia, nor am I persuaded that any harm was done to any one of the Magnett children. Having in mind that Mr. Magnett conceded that he never consulted a physician subsequent to and because of this incident, and that any loss of time from work he thereafter sustained, was unrelated to this incident, I find that Mr. Magnett did not suffer physical or emotional damage.

With regard to plaintiff's second claim in which he seeks an order from this court directing Chief Pelletier to reopen the matter, I am satisfied on the basis of the testimony of Chief Pelletier that when the Chief first received a complaint from plaintiff on or about August 3, 1970, he promptly referred the matter to Charles Wood, Chief of the Investigative Division, and that thereafter Chief Pelletier, as a result of this investigation, received substantially the same information as had been presented to

this court during the course of the trial. Chief Pelletier testified that on the basis of the reports of the investigation, he decided not to impose any sanction on Sergeant Rhodes or the other two members of the police department who entered the building. On the facts of this case, no legal basis for disturbing this administrative decision by Chief Pelletier has been proven.

With regard to the question of identification of on-duty New Bedford police officers, I find that the police officers who entered Mrs. Magnett's apartment were wearing badges; that Officers Sylvia and Carr were wearing badges carrying identifying numbers but there was no number on the badge worn by Sergeant Rhodes.

■ In view of the fact that within a week after the incident involved herein, the Massachusetts Legislature adopted General Laws, Chapter 41, Section 98C which requires police officers to wear either a badge, tag or label which identifies them by name or a badge, tag or label which identifies them by number, there is no occasion for this court to duplicate the mandate of Section 98C by entering an order to the same effect.

■ The issue of the damages which should be awarded plaintiff because of the unlawful entry of the police officers into the apartment of his estranged wife remains to be decided. I find that the $2500 claimed by plaintiff is a purely arbitrary figure with no basis in fact. I further find that plaintiff was not the source of this figure which on cross-examination he conceded was suggested to him by his attorney. Having in mind that the intended purpose of the Civil Rights Act was the protection and vindication of the civil rights of all persons, nominal damages have been proved once an invasion or deprivation of a right to which plaintiff was entitled has been shown. Basista v. Weir, 340 F.2d 74 at 87 (3 Cir. 1965). Nominal damages need not be alleged in a civil rights case in order to permit their recovery. Accordingly, I find for plaintiff in the amount of $500 against the defendant Rhodes and make no finding against the defendant Sylvia, who was acting under orders of Sergeant Rhodes.

■ With regard to plaintiff's application for punitive damages, I find that the conduct of the police in this case falls far short of the conduct involved in Caperci v. Huntoon, 397 F.2d 799 (1 Cir. 1968) where the Court of Appeals for this Circuit ruled that an award of punitive damages was warranted on the facts of that case. The Court of Appeals characterized the police conduct in *Caperci* as "an outrageous invasion of plaintiff's privacy without color of right and for an improper motive." *Caperci, Id.* at 801. The Court of Appeals in *Caperci* similarly ruled that no punitive damages are to be awarded where police officers are "acting in good faith and with no evil intent."

The conduct in the instant case also is materially different from the conduct involved in Hazard, et al v. Rida, et al (D.Mass. Docket No. CA 69–776–G), a case in which Judge Garrity awarded punitive damages on the basis of his finding that there had been a serious physical abuse of the plaintiffs without justification. Judge Garrity observed:

"The court recognizes that exemplary damages should not be assessed against police officers acting in good faith and with no evil intent and are to be awarded only in cases of malicious actions in gross disregard of a plaintiff's rights."

I rule that the conduct in the instant case does not afford a proper basis for the imposition of exemplary or punitive damages.

### JUDGMENT

In accordance with Opinion filed this date, it is Ordered:

1. Judgment for the plaintiff against the defendant William Rhodes, Jr., in the amount of Five Hundred Dollars ($500.00).

2. Judgment for the defendants Joseph Pelletier and Ronald Sylvia.