**UNITED STATES of America ex rel. John MYERS**

v.

**Allyn R. SIELAFF et al.**

**Civ. A. No. 72–132.**

United States District Court,
E. D. Pennsylvania.

Sept. 11, 1974.

Beverly Kay Rubman, Indigent Prisoner Litigation Program, Philadelphia, Pa., for plaintiff.

M. Faith Angell, Asst. Atty. Gen., Philadelphia, Pa., for defendants.

## MEMORANDUM

GORBEY, District Judge.

The plaintiff instituted this action pursuant to the Civil Rights Act (42 U.S.C. § 1983) and the Criminal Conspiracy Act (18 U.S.C. § 241) in January, 1972, while an inmate at the State Correctional Institute at Graterford, Pennsylvania. In a *pro se* complaint, he alleges that he was denied a fair hearing in his attempt to be included in the Commonwealth treatment program, and in a subsequent disciplinary hearing. Defendants filed a timely answer in which five affirmative defenses were raised and now have filed affidavits and moved for summary judgment.

The procedures for screening, selecting and referring inmates to community treatment centers and for temporary home furloughs were required to be established by the Bureau of Correction pursuant to the Act of July 16, 1968, P.L. 351, as amended, 61 P.S. § 1053. "The Bureau of Correction shall establish rules and regulations for granting and administering release plans and shall determine those inmates who may participate in any plan." Commonwealth ex rel. Saunders v. Creamer, 11 Pa.Cmwlth. 160, 312 A.2d 454, 457 (1973). The program is to be utilized as a diagnostic-treatment tool in an individualized program, thus requiring skilled discretion in selecting appropriate participants. Plaintiff alleges that, and in his affidavit states, at the hearing in which he was denied admission to the community treatment program, defendant Shaw, Sergeant of the Guards, was permitted to read false reports and make false statements which were accepted by the staff, including defendants Pace and Barrone, although known by them to be false. It is also alleged that plaintiff was not given the opportunity to object or to rebut such reports and statements. Reference by defendant Shaw was made continually to the contents of an alleged psychiatric report, a report which plaintiff requested to be permitted to examine but whose request was refused. Also, plaintiff alleges he had never been interviewed by a psychiatrist while at Graterford.

On or about November 3, 1971, a hearing was held before defendants Lightcap, Moser and Purcell to consider a misconduct report which arose from the circumstances of the first hearing, which were characterized as involving improper, insolent and disrespectful conduct by the plaintiff. In his affidavit plaintiff denies that he was given prior notice of the hearing and of the charges which were to be brought against him. He also denies the alleged improper conduct at the first hearing. No witnesses appeared against him, and he was not allowed to present any defense; plaintiff also denies in his affidavit that he pleaded guilty as indicated in defendants' "exhibit A", and he also states that most of the material found on page 2 of the defendants' exhibit A is false.

The consequence of the so-called hearing at which plaintiff had no opportunity to face his accusers or to present any defense, was a sentence of two weeks punitive segregation.

The manner in which the two hearings were alleged to have been conducted raises the important issue as to whether plaintiff has been denied procedural due process required by the Fourteenth Amendment.

Plaintiff has abandoned the claim for equitable relief and compensatory damages, but asks for punitive damages because of defendants' willful and malicious disregard of his constitutional rights.

█ In order to state a cognizable claim under the Civil Rights Act, complainant must allege specific conduct by state officials which violates some constitutional right. Gittlemacker v. Prasse, 428 F.2d 1 (3d Cir. 1970);

Brown v. Sielaff, 474 F.2d 826 (3d Cir. 1973). With respect to the first hearing at which plaintiff requested admission to the community treatment program, it is conceded that such admission is not a right guaranteed by the United States Constitution. Nevertheless, such a program has been created by the Commonwealth of Pennsylvania and "the Bureau of Corrections shall establish rules and regulations for granting and administering release plans and shall determine those inmates who may participate in any plan." Commonwealth ex rel. Saunders v. Creamer, *supra.*

■ Thus, it would appear that an inmate's interest in such a state-created release plan is just as vital and significant as his interest in a state-created "good-time credit" for satisfactory behavior while in prison. Consequently, it seems logical to conclude and this court finds that such inmate's "interest has real substance and is sufficiently embraced within the Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d (1974).

■■ Prior case law and most certainly contemporary case law clearly establishes that due process is required if the consequences of an official's actions are sufficiently serious to amount to a "grievous loss". Cafeteria and Restaurant Workers Union v. McElroy, 367 U. S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); Palmigiano v. Baxter, 487 F.2d 1280 (1st Cir. 1973). In the latter case it is stated:

"[i]n a prison setting where liberty is by necessity shrunken to a small set of minor amenities such as work or schooling privileges, . . . it is likely that any marked change of status which forecloses such liberties will be perceived and felt as a grievous loss." *Id.* at page 1284.

Thus, it appears that the denial of the admittance of a qualified inmate to a community treatment program set up by the state would result in a grievous loss just as it would in the revocation of a parole or the denial of good-time credit. Accordingly, the conclusion is irresistible that in a hearing held before the staff of the community treatment program, the basic requirements of due process must be observed, and this very simply stated means that such a hearing when accorded an inmate must not be a mockery or a sham.

No longer is it appropriate to talk or write in terms of "right v. privilege" as respects those who are confined to correctional institutes or prisons. In a leading case, Sostre v. McGinnis, the court wrote:

" . . . the distinction between a 'right' and a 'privilege' . . . or between 'liberty' and a 'privilege' for that matter—is nowhere more meaningless than behind prison walls. The difficult question, as always, is what process was due." 442 F.2d 178 at 196 (2d Cir. 1971).

■■ Starting with the premise that "a person's liberty is equally protected, even when the liberty itself is a statutory creation of the State", and "the *touchstone of due process is protection of the individual against arbitrary action of government*", Wolff, *supra,* 418 U.S. page 558, 94 S.Ct. page 2976, the question is whether the hearings were so conducted as to meet the requirements of procedural due process.

■■ While due process is admittedly a flexible concept, certain basics are well established in the cases: " . . . it can be said that due process embodies the differing rules of fair play, which through the years have become associated with differing types of proceedings . . . The nature of the alleged right involved, the nature of the proceeding,

and the possible burden of that proceeding, are all considerations which must be taken into account." Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 1515, 4 L.Ed.2d 1307 (1960). Hence, the differentiation made in recent cases as to procedures which must be determined with due regard for the legitimate needs of prison officials. Consequently, the requirements to meet due process as to "good-time credits" are considerably different from those relating to the revocation of "parole and probation". Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); Wolff v. McDonnell, *supra.*

A very simple test to apply to the facts of this case would be whether the administrative action taken at the two hearings was, at least, "premised on facts rationally determined" and "in most cases it would probably be difficult to find an inquiry minimally fair and rational unless the prisoner were confronted with the . . . evidence against him, [citations omitted] and afforded a reasonable opportunity to explain his actions." Sostre v. McGinnis, supra, 442 F.2d at page 198. "The relevant facts . . . must not be capriciously or unreliably determined." United States ex rel. Campbell v. Pate, 401 F.2d 55, 57 (7th Cir. 1968). *See also* Goldberg v. Kelly, 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970). "The fundamental requisite of due process of law is the opportunity to be heard", and "the hearing must be 'at a meaningful time and in a meaningful manner' ".

Plaintiff's is a *pro se* complaint, well refined by the diligence and dedication of his counsel, and as such, in determining whether a cause of action has been stated, the court must consider whether it can "say with assurance that under the allegations of the *pro se* complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

It seems crystal clear that if plaintiff can prove his allegations with respect to each hearing which include, *inter alia,* the willful acceptance of known false statements, refusal to permit plaintiff to contest their truth, refusal to confront him with the witnesses against him, followed by punitive action, that such action would not only offend one's sense of decency and fairness, but would also violate the inmate's constitutional rights.

In this situation, it appears that while plaintiff has abandoned a claim for actual damages an award of nominal damages could in the exercise of discretion be awarded plaintiff if in a trial on the merits the plaintiff was successful in proving deprivation of a recognized right. Basista v. Weir, 340 F. 2d 74, 87 (3d Cir. 1965). If plaintiff is successful in a suit on the merits, punitive damages could properly be assessed as a deterrent to similar future conduct, the consequences of which is to make a mockery of any system of procedure involving a "hearing" by authorized state officials. Sostre v. McGinnis, *supra;* United States ex rel. Motley v. Rundle, 340 F.Supp. 807 (E.D.Pa.1972).

Determination that, assuming the ability of plantiff to sustain his allegations, plaintiff has been deprived of his constitutional rights to procedural due process and that an award of punitive damages would be appropriate, does not present the question of retroactivity involved in Bauer v. Sielaff, 372 F.Supp. 1104 (E.D.Pa.1974); Wolff v. McDonnell, *supra,* and Gray v. Creamer, 465 F.2d 179 (3d Cir. 1972).

This is not a case of reasonable reliance on pre-Gray standards. Bauer v. Sielaff, *supra;* long before the decision in that and similar cases the basic re-

quirements of procedural due process were very well settled. As stated by the Supreme Court of the United States in 1959:

"Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirement of confrontation and cross-examination . . . This Court has been zealous to protect these rights from erosion. *It has spoken out not only in criminal cases . . . but also in all types of cases where administrative and regulatory actions were under scrutiny.*" (Emphasis added) Greene v. McElroy, 360 U.S. 474, 496–497, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959).

Under contemporary case law it seems clear that defendants are not immune from suit under the Civil Rights Act. Meyers v. Alldredge, 492 F.2d 296 (3d Cir. 1974); Wolff v. McDonnell, *supra.*

The theory of the plaintiff in making Robert L. Johnson, Superintendent, Erskine Deramus, Deputy Superintendent, and Allyn R. Sielaff, defendants is not clear from the complaint. Perhaps it is on a theory of *respondeat superior,* an unsettled area of the law. Bauer v. Sielaff, *supra,* 372 F.Supp. footnote 8 and cases cited therein, page 1111.

It follows therefore that the defendants' motion for summary judgment must be denied.