Marvin KARGER, Plaintiff,

v.

Maurice SIGLER et al.,
Defendants.

Civ. A. No. 74 4719–G.

United States District Court,
D. Massachusetts.

Oct. 24, 1974.

John P. White, Jr., Crane, Inker & Oteri, Stephen R. Katz, Boston, Mass., for plaintiff.

Asst. U. S. Atty., William A. Brown, for defendants.

## MEMORANDUM OF DECISION

GARRITY, District Judge.

Plaintiff in this case alleges that actions taken in connection with his application for parole by the United States Board of Parole, of which Maurice Sigler is the chairman, violated the applicable rules and regulations of the Parole Board set out in 28 C.F.R. §§ 2.12–2.30, and denied him due process of law in violation of the fifth amendment to the Constitution of the United States. Plaintiff seeks a preliminary injunction and a declaration that actions resulting in a denial of parole were invalid. Briefs and oral arguments were submitted by the parties.

The facts are not in dispute. Plaintiff was given an initial hearing on August 28, 1974 on his application for parole before a panel of two hearing examiners in accordance with the procedures set forth in § 2.12. A written notice of action granting him parole and setting an effective date of October 17, 1974 for release was sent to plaintiff on August 30, 1974. On October 2, 1974 the Northeast Regional Director designated plaintiff's case as an "Original Jurisdiction" case and referred it to the Regional Directors for a decision under § 2.17, feeling that the case met the criteria set forth in § 2.17(b). Plaintiff never received the notice of this referral, probably because he was at the time in the Charles Street Jail, Boston, awaiting hearing on a habeas corpus petition. Section 2.17(a) provides that "all original jurisdiction cases shall be heard by a panel of hearing examiners who shall follow the procedures provided in § 2.-12." A summary of the hearing and additional comments of the examiners are submitted to the five Regional Directors who "make the original decision by a majority vote." In plaintiff's case a subsequent, second hearing after the original jurisdiction designation was not held, but a decision to rescind parole was made after consideration of the record of plaintiff's initial hearing, which plaintiff admits complied with § 2.12 procedures. Notice of the Regional Directors' action was sent to plaintiff on October 8, 1974.

There are three provisions in the Parole Board regulations providing for action by a Regional Director after an initial panel decision. Section 2.24 refers to reconsideration only prior to written notification to the petitioner of the panel's decision. Section 2.28 provides for reopening of cases at any time upon receipt of "new information of substantial significance." The regulations provide that in this situation the Director may schedule an institutional hearing or take actions authorized under § 2.25, which may be to "affirm the decision, order a new institutional hearing, order a regional appellate hearing, reverse the decision, or modify a continuance or the effective date of parole. Reversal of an examiner decision or the modification of such a decision by more than one hundred eighty days whether *based upon the record* or following a regional appellate hearing, shall require the concurrence of two out of three Regional Directors." (Emphasis added.) The Regional Director here did none of those things, but instead designated the case "Original Jurisdiction" for decision under § 2.17.

Defendants stated at the hearing that there was no substantial new information that was the basis for reopening the case, but that reopening was made under § 2.30, which provides that the

Regional Director may, after an effective date has been set, "reconsider any case prior to release and may reopen and advance or retard a parole date." Plaintiff argues, and we agree, that § 2.30 contemplates and allows such action only where there has not been the required continued good conduct or completion of a satisfactory plan for supervision. Further, we note that in the Regional Directors' statement of reasons for the reversal in plaintiff's case, it referred to "new and fuller information . . . received September 30, 1974." We conclude then that the Regional Director's action, if valid at all, was taken under the provisions of § 2.28.

The court rules that the Board did not follow its own rules and regulations regarding reopening of cases. Designation of the case as original jurisdiction and proceeding under § 2.17 is not among the alternatives available to the Regional Director under § 2.28 and § 2.-25. Even if it were, a hearing subsequent to designation as an original jurisdiction case, which would take into account the "new and fuller information" referred to, would appear to be more in keeping with the mandate of § 2.17 than the use of the previous hearing record as a basis for decision.

■ However, this ruling is not dispositive. Under § 2.28 and § 2.25, a simple reversal of the original grant of parole could have been achieved without a hearing with the concurrence of two out of three Regional Directors. Here, four out of five Regional Directors voted to reverse the grant of parole to plaintiff. Further, appeal procedures exist under § 2.26 in which the National Appellate Board can order a rehearing or take action on the basis of "significant information in existence but not known at the time of the hearing," as appears to be the case here. Thus, any injury to plaintiff solely from the failure of the defendant to follow its own regulations concerning his parole application was minimal and can be cured by further appellate procedures available to him.

There remains, however, the question of whether the parole board regulations themselves are insufficient to provide plaintiff with the due process of law to which he is entitled under the fifth amendment to the Constitution. Where plaintiff had not been released from custody, the actions taken by the Parole Board resulting in a reversal of an earlier decision to grant parole cannot be characterized as the kind of revocation requiring the procedural guarantees of Morrissey v. Brewer, 1972, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484. The liberty of which a parolee on the street is deprived upon revocation involves an actual change from a condition of freedom, albeit qualified, to work, to be with family and friends, to live outside prison walls, to a return to an institution and all its deprivations and penalties. Here, what was taken from plaintiff was his expectation and what appeared to be his established right to conditional liberty at a specific future time. But a prisoner does not leave his constitutional rights to due process at the prison door when he enters and pick them up again when he departs, permitting arbitrary and unchallengeable decisions which can deprive him of rights to conditional liberty once granted.

■ The Supreme Court has recognized recently that deprivation of good-time credit for satisfactory behavior, even though not the same "immediate disaster that the revocation of parole is for the parolee", is a matter of considerable importance, and an interest of the prisoner of real substance, sufficiently embraced within fourteenth amendment "liberty" to entitle the prisoner to minimum appropriate procedures under the due process clause. Wolff v. McDonnell. 1974, 418 U.S. 539, 94 S.Ct. 2963, 41 L. Ed.2d 935. The Court noted that loss of good time could postpone the parole eligibility date and extend the maximum time to be served but that it was not certain to do so. The rescission of a decision to grant parole on a set date certainly works a more immediate change in the conditions of a prisoner's liberty

than loss of good time, and is entitled by the due process clause to at least some procedural protections appropriate under the circumstances. This decision is not based on a determination that "parole" begins at any particular point in the process, but on the principle that parole is so important to any prisoner that actions depriving him of even a future parole once granted work a grievous loss upon the prisoner.

■■■■ "Once it is determined that due process applies, the question remains what process is due." Morrissey v. Brewer, 1972, 408 U.S. 471 at 481, 92 S.Ct. 2593, at 2600, 33 L.Ed.2d 484. Due process is, of course, flexible, and a determination of what procedures are required involves a balancing of the interest of the prisoner in the continuation of the conditional grant of parole and the Parole Board's interest in preventing the release of a prisoner it considers unqualified for parole. A prisoner should not have to fear that a parole which has been duly granted to him may be snatched away without notice or further hearing, on the basis of "new and fuller" information which he has no opportunity to explain or question before the decision is made, or that he is only assured of parole when the prison door shuts behind him. Even parole board regulations contemplate that the decision of the initial panel should be final unless action initiating reconsideration is taken *before* the inmate receives written notice of the panel's decision (§ 2.-13(a)). The regulations of the Board also contemplate at nearly every point in the parole application process the alternative or requirement of a hearing.

Given the absence of an interest by the Parole Board in rescinding such decisions without some informal procedural guarantees, where a decision to grant parole has been made, apparently final in form, and upon which a prisoner has a right to rely, no change that reverses that decision should be made without minimum requirements of due process, at least notice and an opportunity to be heard. The hearing need not be a formal, adversary hearing with rights to present witnesses and documentary evidence and to cross-examination. An informal hearing as provided in § 2.12 of the Parole Board's regulations, which would permit the prisoner to explain new evidence and respond to questions which have moved the Parole Board to reconsider its earlier decision is sufficient, combined with the Parole Board's current practice of providing reasons and findings for its decisions, to assure the prisoner that his conditional grant of parole has not been rescinded arbitrarily and to provide the Parole Board with the opportunity to get the prisoner's answers to any new questions before changing its decision.

■■■■ We therefore hold that the Parole Board has failed to follow its own regulations, and that insofar as those regulations do not provide for a hearing before rescission of a previous panel decision on the basis of new information, due process requires notice and a hearing before such action. Accordingly it is ordered that within 30 days the defendant Parole Board shall provide plaintiff with *notice and a hearing* on the question of rescission of the panel's grant of parole to plaintiff.*

---

* Arguments and briefs in this case were directed to plaintiff's motion for a preliminary injunction. However, since no relevant facts are disputed, this memorandum and order will serve as a final decision on the merits of the case unless objection by any party is filed within two weeks.