Frank LEPRE, Jr.

v.

William F. BUTLER et al.

Civ. A. No. 74-1507.

United States District Court,
E. D. Pennsylvania.

April 11, 1975.

**186**

Indigent Prisoner Litigation Program, Philadelphia, Pa., for plaintiff.

Lawrence Barth, Asst. Atty. Gen., Commonwealth of Pennsylvania, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

■ Plaintiff's pro se civil rights complaint alleges that the Pennsylvania Board of Probation and Parole (Parole Board) revoked the grant of parole without prior notice or hearing, in violation of the rule of Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The essential facts are not in dispute. Both parties have moved for summary judgment. Because the application of the *Morrissey* rule depends upon factual circumstances not fully developed at this stage of the proceedings, both motions for summary judgment must be denied.

In May of 1974, plaintiff, while serving a prison sentence imposed by a Pennsylvania Court, was advised in writing by the Parole Board that at a meeting of the Parole Board held May 6, 1974, the following decision was rendered:

Parole granted to be effective 6–3–74 to an in-patient drug program only.

Removal or termination from this program for any reason other than successful completion is considered a violation of parole.

On June 10, 1974 plaintiff, still a prisoner, received written notice from the Parole Board that at a meeting of the Parole Board held on June 5, 1974 the following decision was rendered:

Rescind Board action of 5–6–74, and now refuse parole and review when outstanding charges are disposed of.

There was no notice to plaintiff, nor was he granted any hearing prior to the decision of June 5, 1974 to "rescind" the prior grant of parole.

On June 10, 1974 a criminal complaint was filed charging plaintiff under State law with having on June 4, 1974 obtained a controlled substance (hydromorphone hydrochloride, a Schedule II drug) by misrepresentation. According to the answer filed and plaintiff's "statement of facts" in the brief for summary judgment, the plaintiff was transferred from the Bucks County Rehabilitation Center to the Bucks County Prison on May 22, 1974 and the Parole Board was, on the same date, informed that criminal charges of violation of the drug laws would be filed against plaintiff.

The Parole Board held a revocation of parole hearing on July 3, 1974 and affirmed its decision of June 5, 1974. No contention is raised that such hearing failed in anyway to comport with "due process."

■ Morrissey v. Brewer, *supra* 408 U.S. at 485, 92 S.Ct. at 2602, mandates that where a prisoner has been released on parole, and the parolee is arrested and detained as a parole violator:

[D]ue process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available.

The "minimal inquiry" should be by "an independent decisionmaker" to determine whether "reasonable cause exists to believe that conditions of parole have been violated." Morrissey v. Brewer, *supra* at 486, 92 S.Ct. at 2603. In the present case no hearing was held until approximately one month after the revocation, and no explanation for the delay is offered. On the surface, at least, this would appear to be a Civil Rights Act violation.

Morrissey v. Brewer involved two petitioners seeking habeas corpus release, rather than damages under the Civil Rights Act, 42 U.S.C. §§ 1983, 1985. In the Supreme Court respondents asserted for the first time that as to petitioner Brewer, a revocation hearing was held approximately two weeks after revocation and as to petitioner Booker, a revocation hearing was held approximately one month after revocation. In *Morrissey*, 408 U.S. at page 490, 92 S.Ct. at 2605 the majority opinion states:

> If it is determined that petitioners admitted parole violations to the Parole Board, as respondents contend, and if those violations are found to be reasonable grounds for revoking parole under state standards, that would end the matter.

Did *Morrissey* rule out a § 1983 damage action for failure to hold a prompt preliminary hearing, if, in fact, the revocation was proper, "but for" the failure to hold such a hearing? I think not, but at least the reason, if any, for failure to hold a prompt hearing might give rise to a possible defense, and in any event would appear to be relevant on any issue of damages.

Defendants in this case seek to draw a distinction between "revocation" after release of a prisoner and while he is "out on the street" and a decision to "rescind" the grant of a future parole date certain.[1] Although the "loss of liberty" is more "grievous" to one "out on the street," the taking away of a future parole date certain, seems clearly to be a "grievous loss" subject to some minimal "due process" protections.

Sexton v. Wise, 494 F.2d 1176, 1178 (5th Cir. 1974), held that the grant of parole as of a future date certain under the Federal Youth Corrections Act, could be summarily rescinded without notice or a hearing "prior to final physical release."[2] There is substantial authority by direct holdings and by dicta to the contrary. Jackson v. Wise, 390 F.Supp. 19 (C.D.Cal.1974), 43 U.S.L.W. 2272 (Dec. 10, 1974); Karger v. Sigler, 384 F.Supp. 10 (D.Mass.1974); Batchelder v. Kenton, 383 F.Supp. 299 (C.D. Cal.1974). *Compare also* Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Bradford v. Weinstein (4th Cir. 1974); Pavia v. Hogan, 386 F.Supp. 1379 (N.D.Ga.1974); Gaddy v. Michael, 384 F.Supp. 1390 (W.D. N.C.1974); United States, ex rel. Myers v. Sielaff, 381 F.Supp. 840 (E.D.Pa. 1974).

Factually the present case fits in between Morrissey v. Brewer and Jackson v. Wise. In *Morrissey*, revocation occurred after release of the parolees. In *Jackson*, revocation or rescission occurred prior to release and prior to the date when parole was to commence. In the present case the revocation or rescission occurred prior to the actual release, but two days after the date when the release on parole was to have commenced.

Defendants cite Biagiarelli v. Sielaff, 483 F.2d 508 (3d Cir. 1973), involving a prisoner transfer to solitary confinement prior to a hearing because of suspicion of a conspiracy to escape. The Third Circuit held that summary judg-

---

[1]. The terminology of "revocation" or "rescission" is to me of little consequence when considering possible constitutional violations. What is important is the operative factual situation.

[2]. The vitality of Sexton v. Wise is questionable in that it preceded Wolff v. McDonnell. In this regard see Pavia v. Hogan, 386 F. Supp. 1379, 1384 (N.D.Ga.1974).

ment on a theory of a *per se* violation of constitutional due process rights was in error, because there could be "unusual circumstances" such as an "emergency situation" allowing such action prior to a hearing. I find little in *Biagiarelli* to give comfort to the defendants on the merits of this case. However, until the full factual circumstances are made a matter of record, summary judgment, in any event, would appear to be inappropriate.

■ Plaintiff has completed the full sentence and has been released. Any injunctive relief would, therefore, now appear to be inappropriate and the issue of possible relief moot. In any event to the extent that the sought after injunctive relief was a substitute for relief by way of habeas corpus, a § 1983 civil rights action is inappropriate, especially where State remedies have neither been sought nor exhausted. However, the damage cause of action remains alive, even though plaintiff no longer remains in State custody.

■ Defendants, being individual members and/or officers of the Parole Board claim as a complete defense, official immunity. The "Third Affirmative Defense" states:

The defendants, acting within the outer perimeter of their official duties and in good faith, are immune from suit for damages under the Civil Rights Act, 42 U.S.C. § 1983.

The question of "good faith" however is a factual issue and an affirmative defense. Wood v. Strickland, —— U.S. ——, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), 43 U.S.L.W. 4293 (February 25, 1975); Scheuer v. Rhodes, 416 U.S. 232, 250, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Fidtler v. Rundle, 497 F.2d 794, 801 (3d Cir. 1974).

■ What if any damages plaintiff will be able to establish must also await further factual determinations. There are several possible periods of time during which plaintiff may contend that he was held in custody in violation of his constitutional rights. Parole was originally to be granted as of June 3, 1974 "to an in-patient drug program only." On June 5, 1974 the grant of parole was "rescinded" prior to plaintiff's actual release on parole. On June 10, 1974 new charges of violation of the drug laws were filed against plaintiff charging the date of the offense to be June 4, 1974. On July 3, 1974 a parole revocation hearing was held and the "rescission" order upheld. On July 24, 1974, plaintiff was sentenced on the new charges, the sentence to run concurrently with the term he was then serving. On January 31, 1975, the maximum term of the sentence expired. Arguably, any of the above dates between June 3, 1974, the date he was originally scheduled to be released and January 31, 1975, the date of termination of the maximum term of imprisonment, could be utilized. Also the degree of added "loss of liberty" and the "grievous loss" differential between incarceration in the Bucks County Prison from an in-patient drug program raise uncertain issues as to a proper measure of damages.

■ Finally, counsel was appointed for plaintiff pursuant to the Indigent Prisoner Program, provided by Local Rule 9½ allowing representation of indigent prisoners. Apparently, plaintiff is no longer a prisoner. I will not, *sua sponte*, direct withdrawal of student counsel, but will permit continued representation by such appointed counsel unless and until a proper motion is filed and acted upon by this court.